(37 App. Div. 618.)

### RAFFERTY et al. v. BUFFALO CITY GAS CO. et al.

(Supreme Court, Appellate Division, First Department. February 24, 1899.)

1. CORPORATIONS—ISSUANCE OF STOCK.

The provision of section 42 of the stock corporation law that no stock shall be issued for less than its par value for stock of another corporation is not violated where a gas company purchases all the stock of another by issuing its own stock therefor, merely because the plant and tangible property thus purchased are less than the par value of the stock issued, if the benefits otherwise derived warrant the transaction.

2. SAME.

The provision of section 42 of the stock corporation law that no corporation shall issue stock except for property actually received for its "lawful purposes," does not, by the words "lawful purposes," exclusively restrict a company organized to manufacture, sell, and distribute gas to the object thus expressed; but it may issue its stock in exchange for all the stock of another gas company, if the transaction is otherwise permissible.

3. SAME—MONOPOLISTIC COMBINATION.

A contract by a gas company to issue its stock in exchange for all the stock of another, merely to prevent ruinous competition, is not a combination with the other company for the creation of a monopoly, contrary to section 7 of the stock corporation law.

4. SAME—RESTRAINT OF TRADE.

Neither is it an unlawful restraint of trade, contrary to said section.

5. SAME—PREVENTION OF COMPETITION.

Neither is it a prevention of competition in a necessity of life, contrary to said section.

6. SAME—CONSOLIDATION.

No consolidation follows from the issuance by one corporation of stock in exchange for all the stock of another.

7. SAME—ACTS OF DIRECTORS.

The act of the directors of a gas company in purchasing the stock of a competing company, where there is no fraud or wrong done on the part of the directors, will not be interfered with at the suit of a stockholder, where the matter is left to the ultimate determination of the stockholders.

Appeal from special term, New York county.

Action by Oscar G. Rafferty and others against the Buffalo City Gas Company and others. From an order dissolving a temporary injunction, plaintiffs appeal. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

Henry G. Atwater, for appellants.
John G. Milburn, for respondents.

PATTERSON, J. The plaintiffs, each owning 100 shares of the capital stock of the Buffalo City Gas Company, brought this action, against that corporation and its directors, to restrain the defendants from consummating a contemplated purchase of certain bonds and stock of the People's Gaslight Company of Buffalo. A temporary injunction was obtained, which, on motion, was dissolved, and from the order of dissolution this appeal is taken.

The allegations of the complaint present grave charges against the directors of the defendant corporation, and impute to them a motive for entering into the transaction which, if well founded, would call for the interference of a court of equity. Those allegations are

that the majority of the individual defendants, directors of the Buffalo City Gas Company, have devised and intend to carry out a scheme by which it will be made to purchase the stock and bonds of the People's Gaslight Company at grossly excessive prices, and pay therefor in bonds and stock of the Buffalo City Gas Company; that the directors implicated in the transaction are the owners of or interested in the bonds and stocks they intend to purchase, and are therefore acting merely for their own aggrandizement, to the destruction of the interests of the plaintiffs and other stockholders of the Buffalo Company. Those charges are overwhelmingly disproven. It is shown that not one of such directors is interested in the securities of the People's Gaslight Company, with the exception of Mr. Seligman, who owns 200 shares of its stock. It is admitted on the part of the defendants that the price to be paid for the securities of the People's Gaslight Company is excessive, reference being had to the intrinsic value of the plant of that company; but they show that, by acquiring the control of the People's Gaslight Company, they virtually secure to the Buffalo Gas Company a franchise which, if operated adversely to or in rivalry with the latter company, might be ruinous to its business. The defendants also present a state of facts which they claim justify them in making the purchase as a matter of prudence, and in the best interest of the Buffalo City Gas Company, for its protection, and to save it from the destruction of its business. Every element of fraud or intentional wrongdoing of the directors being eliminated, there is left only, on the merits, a matter of business policy, for the directors to determine in good faith, viz. whether they shall, with the assent of a majority of the stockholders, complete the transaction. They show that they do not intend to dispose of the subject upon their own responsibility. They have submitted it to the stockholders to say whether the transaction shall be consummated. It is a matter, therefore, which should be left to the determination of the directors and stockholders, and should not be interfered with by the court, unless the proposed transaction is so tainted with illegality that it must be enjoined, in view of the fact that final relief would be unavailing unless temporary restraint is imposed.

It is claimed by the plaintiffs that such illegality has been shown here, arising, in the first place, from want of power in the directors to make the proposed purchase; that, therefore, these plaintiffs stand in the attitude of shareholders, seeking to enjoin an ultra vires act of the directors. But there is a power to purchase expressly given by section 40 of the stock corporation law, which provides that such a corporation may "acquire, hold, and dispose of the stock, bonds, and other evidences of indebtedness of any corporation, domestic or foreign, and issue in exchange therefor its stock, bonds, or other obligations, if authorized so to do by a provision in the certificate of incorporation of such corporation." The certificate of incorporation of the Buffalo City Gas Company contains the authority mentioned in the section of the statute quoted. There is no limitation upon the extent to which the right to purchase given by that section may go, whether as to the whole or a controlling interest or a smaller por-

56 N.Y.S.—19

tion of the stock, bonds, etc., purchased under the permission of that section; and, as the legislature has placed no limitation in that regard, the court cannot undertake to do so. But it is said that the permission given by the fortieth section must be construed in connection with other provisions of the stock corporation law relating to the same subject. Section 42 provides that no stock shall be issued (in exchange, etc.) for less than its par value, and no bonds shall be issued for less than the fair market value thereof. The claim is made by the plaintiffs that it appears that the stock of the Buffalo City Gas Company is to be issued for much less than its par value, and inferentially the bonds at much less than their market value. If the plant and tangible properties of the People's Gaslight Company are to be alone considered in the ascertainment of the value of that which it is proposed by the Buffalo City Gas Company to purchase, then the requirement of the forty-second section is not satisfied. But the plaintiffs wholly ignore the circumstance that, through the purchase, the franchise of the Queen City Gas Company comes under the control and virtual ownership of the Buffalo City Gas Company, as that necessarily goes with the purchased stock. The great value of the Queen City Gas Company's franchise is made to appear generally, for, of course, it cannot be reduced to an actual inventoried valuation. It is not therefore made to appear that the provision of the forty-second section referred to is violated.

It is further claimed that another provision of the forty-second section of the stock corporation law prohibits the proposed transaction. That provision is that no corporation shall issue either stock or bonds, except for money, labor done, or property actually received for the use and lawful purposes of such corporation. It is not required that we should now give a definition of the words "lawful purposes," as used in this clause of the statute. They are very general, and would seem primarily to mean purposes not foreign to the business of the corporation, and such as are not disconnected with the lawful management of that business. We suppose it to be a lawful purpose of the corporation to secure itself against ruinous competition whereby its whole business may be destroyed. It seeks to do that by making a purchase authorized by the law. The words "lawful purposes" are not to be construed with the narrow restriction which would apply them exclusively to the object for which the corporation was created, namely, the manufacture and sale and distribution of gas. If the proposed transaction is otherwise legal, we should construe it to be within the lawful purposes of the corporation, the statute permitting the purchase to be made.

It is further said that the contemplated purchase operates, in effect, a combination with another company for the creation of a monopoly, or the unlawful restraint of trade, or the prevention of competition in a necessary of life, contrary to the provision of section 7 of the stock corporation law. A monopoly is not constituted. No exclusive privilege or right as against individuals or corporations to manufacture and sell and distribute gas is acquired. Nor, in a more restricted use of the word "monopoly," is that condition brought about by force of this contract. A more plausible objection

to it would be that it is a contract in restraint of trade to prevent competition, but it is made to appear that that objection is untenable. Contracts that are intended to effect or must necessarily result in an unlawful restraint of trade or the prevention of competition may, under certain circumstances, be enjoined, but whether at the suit of a stockholder against his own company, or its directors, it is not now necessary to consider. The contract of purchase here involved does not appear on its face to be in unlawful restraint of trade, nor to prevent lawful competition. The avowed and apparent purpose of it is to prevent ruinous competition. It is not even shown that the Buffalo City Gas Company does not intend to use the plant of the People's Gaslight Company, or to refrain from acting under the franchise of the Queen City Gas Company. Contracts cannot be said to be in restraint of trade where a purchase otherwise lawful is made by one party of the business and all its incidents of another party, even where the selling party enters into a covenant not to engage in the same business within a determined territory, such covenant being no wider nor broader than is necessary for the protection of the thing sold. Match Co. v. Roeber, 106 N. Y. 473, 13 N. E. 419. If such a covenant could be enforced, then the contract, being otherwise legal and unobjectionable, must, of course, be valid. But it is urged that the effect of the contract is to prevent lawful competition. It is not necessarily so. It seems to be a contract which the directors of the Buffalo City Gas Company regard as necessary, not merely to its prosperity, and for the enhancement of its profits, but to the existence of its business. What the rivalry of the only partially developed business of the People's Gaslight Company has done already to the detriment of the Buffalo City Gas Company appears from the papers. A contract made to prevent or avoid destructive competition is not necessarily invalid.

It was said in the case of Match Co. v. Roeber, supra:

"We suppose a party may legally purchase the trade and business of another for the very purpose of preventing competition; and the validity of the contract, if supported by a consideration, will depend upon its reasonableness as between the parties. Combinations between producers to limit production and to enhance prices are or may be unlawful, but they stand on a different footing."

In People v. North River Sugar-Refining Co., 54 Hun, 354, 7 N. Y. Supp. 406, Mr. Justice Barrett says:

"Excessive competition may sometimes result in actual injury to the public; and competitive contracts, to avert personal ruin, may be perfectly reasonable. It is only when such contracts are publicly oppressive that they become unreasonable, and are condemned as against public policy."

And later it is said by Judge Gray in Vinegar Co. v. Foehrenbach, 148 N. Y. 65, 42 N. E. 403:

"But not all combinations are condemned, and self-preservation may justify prevention of undue and ruinous competition, when the prevention is sought by fair and legal methods."

We are not able to say and cannot adjudge from what is now before us that the contract under consideration is anything other

than a reasonable one made to prevent the apprehended consequences set forth by the directors in the papers submitted in answer to this motion.

Finally, it is suggested that the whole scheme is merely one to bring about a practical consolidation of two corporations, contrary to the method which the statute has pointed out by which such consolidation may be effected. The answer to this seems obvious. There is no consolidation either in fact or in law. Each corporation maintains its own identity. We are therefore of the opinion that no controlling legal reason is shown for the re-establishment of the injunction.

The defendants have shown in their affidavits what apparently is an adequate reason for making the contract, based upon an actual necessity for acquiring the stocks and bonds of the People's Gaslight Company; and they have also shown that they cannot accomplish that object upon better terms than those submitted for the consideration of the shareholders of the Buffalo City Gas Company. The method of their procedure shows honesty of purpose, was entirely open and frank, was communicated in all its details and with all its consequences to the stockholders, and is referred to them for approval or rejection. Under such circumstances, the case, as was remarked by the justice at special term, presents only a matter of business judgment. It cannot now be held that the price is so exorbitant as to indicate a waste of the Buffalo City Gas Company's assets, or fraud or irregularity, compelling the interference of the court. From all that appears, the course of the directors may be a wise method, reluctantly resorted to, as they say, of saving their company from serious disasters attendant upon a ruinous competition. The injunction was properly dissolved, and the interests of these three plaintiffs, who sue only for themselves, are fully protected by the bond exacted by the court below on dissolving the injunction, and which has been furnished in accordance with the requirement of the order.

The order appealed from must be affirmed, with costs. All concur.