### BURROWS v. INTERBOROUGH METROPOLITAN CO. et al.

(Circuit Court, S. D. New York. July 9, 1907.)

1. MONOPOLIES—STATUTES PROHIBITING—"MONOPOLY" DEFINED.

In statutes prohibiting contracts or combinations creating monopolies, the word "monopoly" is not used in a strict legal sense, as including the power to legally exclude all others from the field monopolized, since such a monopoly cannot be created by a contract or combination, but only by sovereign power; but it is used in a different, but equally well-understood sense as meaning the obtaining of a substantially complete control of a particular business or article of trade.

2. SAME—CORPORATIONS—PURCHASE OF STOCK OF OTHER CORPORATIONS—LEGALITY UNDER NEW YORK STATUTE.

Section 40 of the stock corporations law of New York (Laws 1892, p. 1834, c. 688), which authorized a corporation to acquire and own the stock of other corporations, if so provided in its certificate of incorporation, is qualified by section 7 of the same law (Laws 1897, p. 313, c. 384), which provides that "no domestic stock corporation and no foreign corporation doing business in this state shall combine with any other corporation or person for the creation of a monopoly or the unlawful restraint of trade, or for the prevention of competition in any necessary of life"; and the acquisition by one corporation of the stock of another, which was unauthorized prior to the enactment of such law, was not thereby made lawful, where the effect would be a combination in violation of said section 7.

[Ed. Note.—Acquisition by corporation of stock of other corporation, see note to Anglo-American Land, M. & A. Co. v. Lombard, 68 C. C. A. 120.]

3. SAME—HOLDING CORPORATIONS—COMBINATION OF STREET RAILROAD COMPANIES.

The acquisition by a corporation of a controlling interest in the stock of the corporations owning or controlling and operating all of the street railway lines in the boroughs of Manhattan and the Bronx in New York City, including the underground, elevated, and surface lines, is unlawful, as creating a practical monopoly of the means for transportation of passengers in the city, in violation of section 7 of the stock corporations law of the state (Laws 1897, p. 313, c. 384).

4. SAME—CORPORATIONS—SUIT BY STOCKHOLDER—DEFENSES.

In a suit by a stockholder in a corporation to set aside a transfer of a controlling interest in its stock to a holding corporation on the ground that the purpose and effect of such transfer is to create an unlawful monopoly in violation of a state statute, the question whether or not the corporation of which complainant is a stockholder has been guilty of a

violation of the same statute is not in issue, and such violation, if it exists, is not a defense to the suit.

**5. CORPORATIONS—SUIT BY STOCKHOLDER IN CORPORATE NAME—PLEADING.**

A bill by a stockholder against the corporation and others in a federal court *held* to sufficiently comply with equity rule 94 by showing that the suit was not collusive and that any application to the officers of the corporation to bring the suit would have been futile.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, §§ 816, 817.]

**6. MONOPOLIES — COMBINATION OF CORPORATIONS — REMEDIES — DEFENSES — LACHES.**

Where application was made to the Attorney General of the state to bring a suit to dissolve an alleged illegal combination between corporations, a stockholder of one of such corporations was not chargeable with laches in waiting until such application was denied before bringing suit in his own behalf and that of the other stockholders similarly situated.

In Equity. On demurrers to bill.

Coudert Bros. (Wilson, Moore & McIlvaine, of counsel), for complainant.

Davies, Stone & Auerbach, Strong & Cadwalader, Henry A. Robinson, Cravath, Henderson & De Gersdorff, and Nicoll, Anable & Lindsay (Julien T. Davies, Geo. W. Wickersham, Joseph P. Cotton, Jr., and De Lancey Nicoll, of counsel), for defendants.

HOLT, District Judge. The questions presented in this case arise upon several demurrers filed by different defendants to the complainant's bill. The demurrers are substantially alike. The principal ground of demurrer is want of equity; that is, that the bill states no cause of action. The object of the suit is to obtain an adjudication declaring that the transfer of certain stock of the defendant the Metropolitan Securities Company to the defendant the Interborough Metropolitan Company was illegal and void, and setting aside such transfer.

The substantial facts alleged in the bill or stated in the exhibits annexed to it are as follows: That the complainant, Burrows, is a citizen of Illinois, residing at Chicago, and the owner of 1,400 shares of the stock of the Metropolitan Securities Company. That he sues in behalf of himself and of any other stockholders who may come in and contribute to the expense of the suit. That, prior to the organization of the defendant the Interborough Metropolitan Company, the defendant the Interborough Rapid Transit Company was engaged in the maintenance and operation of the underground railway commonly called the "Subway," in the city of New York. That prior to January, 1903, the Manhattan Railway Company was engaged in the maintenance and operation of the elevated railways in the city of New York, and in January, 1903, leased its entire railroad property to the said Interborough Rapid Transit Company, which has since operated said elevated roads. That prior to February, 1902, the defendant the Metropolitan Street Railway Company became, by merger, lease, purchase of stock, or other means, in control of a large number of the street surface railways in the boroughs of Manhattan

and the Bronx. That in February, 1902, the defendant, the New York City Railway, a corporation originally organized under the name of the Interurban Street Railway Company, became the lessee of the railroads of the Metropolitan Street Railway Company. That thereafter the Metropolitan Securities Company was organized and became the owner of all the stock of the New York City Railway Company. That as a result of these operations, in December, 1905, the Interborough Rapid Transit Company controlled and was operating the subway and the elevated railroads, and the Manhattan Securities Company held all the stock of the New York City Railway Company, which controlled and was operating all the street surface railways in the boroughs of Manhattan and the Bronx, the total length of such street surface roads being about 512 miles. That the defendant August Belmont and his business associates controlled the management and business policy of the Interborough Rapid Transit Company. That the defendant Thomas F. Ryan and his associate stockholders owned or controlled a majority of the stock of the Metropolitan Street Railway Company and the Metropolitan Securities Company. That under these circumstances Messrs. Belmont and Ryan, each in behalf of his respective corporations, entered into an agreement to effect a combination and merger of all of said railroads. That for that purpose they caused to be organized, in January, 1906, the defendant the Interborough Metropolitan Company with $55,000,000 of preferred stock, $100,000,000 of common stock, and the power to issue $70,000,000 of collateral trust gold bonds. That thereupon the Interborough Metropolitan Company, in January, 1906, entered into an agreement with the defendant Belmont to purchase from said Belmont all the capital stock of said Interborough Rapid Transit Company, said Metropolitan Street Railway Company, and said Metropolitan Securities Company, or so much thereof as said Belmont might acquire. That thereafter said Belmont acquired and transferred to the Interborough Metropolitan Company about 96 per cent. of the stock of the Interborough Rapid Transit Company, about 81 per cent. of the stock of the Metropolitan Street Railway Company, and about 96 per cent. of the stock of the Metropolitan Securities Company. That the total capitalization of said three companies was $117,000,000, as against the total issue of stock and bonds of the new company of $225,000,000. That in exchange for the stock of said three companies the Interborough Metropolitan Company issued its own securities in the following proportions: For each share of stock of the Interborough Rapid Transit Company, $200 par value of bonds and $99 par value of common stock; for each share of stock of the Metropolitan Street Railway Company, $100 par value of preferred stock and $55 par value of common stock; and for each share of stock of the Metropolitan Securities Company ($75 per share paid up), $93.50 par value of common stock. That the result of these transfers of the stock of said three companies to the Interborough Metropolitan Company was to destroy competition and create a monopoly in the business of the transportation of passengers in the city of New York, and was illegal and void, as being in violation of section 7 of the stock

corporations law of New York (Laws 1897, p. 313, c. 384) and of section 168 of the Penal Code of New York.

The complainant's counsel have not relied, in their oral argument or in their brief filed, on the alleged violation of section 168 of the Penal Code; and, in my opinion, the facts alleged in the bill do not constitute a violation of that section. Section 7 of the stock corporations law of New York is as follows:

"Sec. 7. Combinations Abolished. No domestic stock corporation and no foreign corporation doing business in this state shall combine with any other corporation or person for the creation of a monopoly or the unlawful restraint of trade or for the prevention of competition in any necessary of life."

The principal question in this case is whether the facts alleged in the bill constituted a violation of this section. The defendants' counsel asserts that by the acts alleged in the bill there was no creation of a monopoly, because the essential quality of monopoly is the power to exclude all others from the field monopolized. This is, of course; the strict legal meaning of the term. A patent or copyright in this country, or such exclusive privileges as Elizabeth and James I. were accustomed to confer upon individuals, which gave rise to the great historic controversy in England over monopolies, resulting in the decisions of the courts that they were void at common law, and the act of Parliament declaring that the king had no power to grant them, are monopolies in their strict legal sense. But the word has a different, but a commoner and equally well understood, meaning. When a person or persons have, in fact, obtained a substantially complete control of a particular business or article of trade, they are said to have a monopoly, although they have no legal power to prevent others from competing or attempting to compete with them. I think there can be no doubt that the monopoly prohibited in section 7 of the stock corporations act is of the latter kind. No corporation can, by combining with any other corporation or person, create that kind of monopoly by which they can legally exclude any one else from attempting at least to enter into the same business. Nothing but sovereign power can do that. The monopoly contemplated by section 7 of the stock corporations law is one created merely by contract, and is therefore not, in its legal essence, exclusive. But on the facts alleged in the bill, which the demurrer admits, it is difficult to see how the monopoly shown by them could be more complete. By it every surface street railroad and every elevated railroad and every subway railroad in the boroughs of Manhattan and the Bronx are combined in one management and control. No one can go up or down town in New York without using one of these roads, unless he takes a carriage or walks. It is as absolute a monopoly of the means of the transportation of passengers in New York as can be imagined which is not legally exclusive.

The defendants' counsel claims that section 40 of the stock corporations law authorized the transfer of the securities to the Interborough Metropolitan Company complained of. The part of that section relied on is as follows:

"Any stock corporation, domestic or foreign, now existing or hereafter organized, except monied corporations, may purchase, acquire, hold and dispose of the stocks, bonds and other evidences of indebtedness of any corporation, domestic or foreign, and issue in exchange therefor its stock, bonds or other obligations, if authorized so to do by a provision in the certificate of incorporation of such stock corporation, or in any certificate amendatory thereof or supplementary thereto, filed in pursuance of law, or if the corporation whose stock is so purchased, acquired, held or disposed of, is engaged in a business similar to that of such stock corporation, or engaged in the manufacture, use or sale of the property, or in the construction or operation of works necessary or useful in the business of such stock corporation, or in which or in connection with which the manufactured articles, product or property of such stock corporation are or may be used, or is a corporation with which such stock corporation is or may be authorized to consolidate." Laws 1892, p. 1834, c. 688.

This provision of the stock corporations law was first adopted in 1892. Before that time the general rule of law had been uniformly upheld in this state that a corporation cannot purchase or deal in the stocks of another corporation, unless expressly authorized by law to do so. Talmadge v. Pell, 7 N. Y. 328; Holmes, etc., Co. v. Holmes, etc., Co., 127 N. Y. 352, 27 N. E. 831, 24 Am. St. Rep. 448. Corporations could take and hold the stock of other corporations as security or in payment for a debt (Kent v. Quicksilver Co., 78 N. Y. 159); but the ordinary purchase and dealing by one corporation in the stock of another was held to be ultra vires and illegal. Many acts of New York providing for the formation of corporations affirmatively prohibited it (General Manufacturing Act 1848, p. 56, c. 40, § 8; General Railroad Law 1850, p. 214, c. 140, § 8; General Building Corporations Law 1853, p. 181, c. 117, § 8; General Stage Coach Corporations Law 1867, p. 2483, c. 974, § 8); and prior to 1892 there was never any general authority in this state for a corporation to purchase and hold the stock of another corporation. In 1892 that policy was reversed by the passage of section 40 of the stock corporations act, which, after remaining in force for 15 years, has apparently been repealed, and the ancient policy of the state readopted by the act recently passed, commonly called the "Public Utilities Bill." That bill provides in section 54 that no railroad corporation shall hereafter purchase or acquire, take, or hold any part of the capital stock of any railroad corporation, unless authorized so to do by the commission created by the act, and that, save when stock shall be transferred or held for the purpose of collateral security only with the consent of such commission, no stock corporation of any description, domestic or foreign, other than a railroad corporation, shall purchase or acquire, take, or hold more than 10 per centum of the total capital stock issued by any railroad corporation or street railroad corporation or other common carrier. The public utilities bill, of course, does not apply to or affect this case, which is to be decided by the law in force when the stocks were transferred to the Interborough Metropolitan Company; but its passage tends to show that the policy of the state adopted in 1892, authorizing corporations to deal in stock of other corporations, has not been entirely satisfactory, and that the old policy of the state prohibiting such dealing is, for the present at least, to be substantially readopted.

The facts alleged in the bill undoubtedly bring the case within the

specific terms of section 40. The certificate of incorporation of the Interborough Metropolitan Company is annexed to the bill as an exhibit. It is stated in it that the company is incorporated under the business corporations law of New York; that the purposes for which it is to be formed are, among others, "to subscribe for, purchase, acquire in any manner, hold as investment and dispose of, bonds and other evidences of indebtedness of and shares of capital stock of, or any interest in shares of capital stock of any corporation or corporations engaged in the transportation of passengers in the city of New York, or its suburbs, or territory adjacent thereto, or of any other corporation, domestic or foreign." The Interborough Metropolitan Company was therefore authorized by its charter to purchase, acquire, and hold the securities which it took. If, therefore, section 40 confers an absolute power on such a corporation to purchase and hold the stock of another corporation, unqualified by section 7, when a case arises to which section 7 applies, the transactions attacked in this suit were authorized by section 40. But can section 40 be construed to be unqualified by section 7? Section 40 was first adopted in 1892. Section 7, in its present form, was first adopted at the same time. Before 1890 there was not, so far as I am aware, in the laws of New York, any statutory prohibition against corporations combining with each other to prevent competition. In the stock corporations law of 1890 the following provision appeared as section 7:

"No stock corporation shall combine with any other corporation for the prevention of competition."

In the revision of the stock corporations act of 1892, section 7 was amended so as to read in its present language, as already quoted. Section 7, therefore, in its present form, and section 40, are to be regarded as substantially new legislation introduced into the same statute at the same time. A fundamental rule in the construction of statutes is that, if a statute contains two or more sections which at first view are apparently inconsistent or contradictory, they are to be harmonized and upheld, if possible; and especially must this rule be followed when the alleged inconsistency is between two amendments of an act introduced and adopted at the same time. But I fail to see any necessary inconsistency in the two sections. There may be many cases in which it is desirable and in all respects unobjectionable for a corporation to purchase and hold some of the stock of another corporation; and it would have been perfectly consistent for the Legislature to have tacked section 7 onto section 40 as a proviso. I think that is the true construction of the legislative meaning as shown by the statute. Corporations were authorized by it to purchase, acquire, and hold the stocks of other corporations, provided they did not thereby combine for the creation of a monopoly or the unlawful restraint of trade, or for the prevention of competition in any necessary of life. So long as such acquisition did not create a monopoly, or restrain trade, or prevent competition in any necessary of life, such a purchase was lawful; as soon as it did, it became unlawful.

The defendants' counsel claims that the laws of New York in respect to railroads, and particularly street railroads, provide an espe-

cially liberal policy for the government of such railroads, and that the rights of street and city railways are governed by special statutes applicable to them alone, and which are not modified or affected by section 7 of the stock corporations act. It is true that the laws of New York have made liberal provisions for the leasing, merger, and consolidation of railroad corporations, and especially street railroad corporations. At a very early period in the history of railroads an act was passed in New York (chapter 218, p. 195, of the Laws of 1839) which provided that it should be lawful for any railroad corporation to contract with any other railroad corporation for the use of their respective roads. This act was held to authorize a lease by one railroad corporation of the road of another, and to apply to both street surface and steam railroads. In the case of Gere v. N. Y. Central, etc., Co., 19 Abb. N. C. (N. Y.) 193, it was held to authorize the lease of the West Shore railroad by the New York Central corporation. The roads in that case were immediately parallel and competing, and it was urged that such a lease would destroy competition and create a monopoly; but the court held that the lease was authorized by the act of 1839. That lease, however, was made before the stock corporations act was passed, and no question, therefore, arose as to the effect on that lease of section 7 of that act. In 1855 an act was passed (Laws 1855, p. 517, c. 302) expressly authorizing a street railroad corporation to contract with another such corporation for the use of their respective roads. In 1890 a railroad law was passed which brought into one act the laws relating to steam and street railways. This act contained various provisions authorizing the lease and merger of railway lines. Section 70 authorized the merger and consolidation of continuous or connecting lines. Laws 1890, c. 565, p. 1103. Section 71 provided that:

"In no case shall the capital stock of the corporation formed by such consolidation exceed the sum of the capital stock of the corporations so consolidated at the par value thereof. Nor shall any bonds or other evidences of debt be issued as a consideration for, or in connection with, such consolidation."

Evidently the consolidation virtually effected in the case at bar could not have been carried out under this statute. In the first place, the lines consolidated were not continuous; and, in the next place, the consolidated company could only have issued stock to the amount of $117,000,000, the aggregate of the stock of the three companies, instead of the $155,000,000 of stock and the $70,000,000 of bonds of the Interborough Metropolitan Company.

Section 80 of the railroad law provides as follows:

"Sec. 80. No railroad corporation or corporations owning or operating railroads whose roads run on parallel or competing lines, except street surface railroad corporations, shall merge or consolidate, or enter into any contract for the use of their respective roads or lease the same the one to the other, unless the board of railroad commissioners of the state or a majority of such board shall consent thereto." Laws 1892, p. 1398, c. 676.

The exception in this section in the case of street surface railroad corporations, together with the other legislation heretofore referred to, is claimed to have authorized parallel and competing street surface railroad companies to consolidate; but obviously the consol-

idation in the case at bar could not have been effected under these provisions, because a part of the roads consolidating were not street surface roads. The consolidation of the elevated roads and the subway with any other roads was prohibited by this section, unless the consent of the board of railroad commissioners was obtained. Moreover, all this legislation took place before 1892, when section 7 of the stock corporations act was adopted. These considerations probably account for the fact that the defendants which were organized as holding companies, the Interborough Metropolitan Company and the Metropolitan Securities Company, were each organized under the business corporations act, while the other corporate defendants were organized under the railway corporations act. At all events, it is clear that the validity of the transfers of stock to the Interborough Metropolitan Company which are involved in this suit must depend upon the provisions of section 40 of the stock corporations act, and not upon any provisions of the railroad law.

It is claimed in behalf of the defendants that the fact that no case has been found in which the courts of this state have set aside such a transfer of stock to a holding company on the ground that it violated section 7 of the stock corporations law affords a strong presumption that that section does not apply to such a case. It is true that since 1892 a great and general movement has taken place in this state, as elsewhere in this country, for the consolidation of railroad and other corporations by means of leases, mergers, consolidations, purchases of stock, holding companies, and other devices; and no case decided in this state has been brought to my attention in which such consolidation has been held illegal as a combination to create a monopoly. The only case which has been cited to me in which the effect of section 7 of the stock corporations law upon a merger has been discussed is the case of Rafferty v. Buffalo City Gas Co., 37 App. Div. 618, 56 N. Y. Supp. 288. In that case, Judge Patterson, after saying that no exclusive monopoly was created, added:

"Nor, in a more restricted use of the word 'monopoly,' is that condition brought about by force of this contract."

Whether a monopoly is created is, of course, in every case, a question of fact. In fact, most of the cases of consolidation did not create an actual monopoly. Moreover, these great consolidations are usually devised, organized, and carried out by men who either own a majority of the stock or control the administration of the corporations, and these consolidations are not only profitable to them, but are also profitable or appear likely to be so to the smaller stockholders. They usually approve, and those who do not approve usually acquiesce, believing in the futility or fearing the expense or annoyance of legal resistance, or apprehending that opposition may cause them injury in other respects. At all events, the fact that such suits do not appear to have been previously brought is only material on the question whether the act relied on applies. If it clearly does apply, the fact that no suit may have been previously brought on it is, of course, immaterial.

The complainant, in addition to the claim that the transactions complained of were a combination to create a monopoly, also asserts that

they were illegal as being a combination for the unlawful restraint of trade or for the prevention of competition in a necessary of life, within the remaining provisions of section 7. I think that something may be said in support of these claims, but I doubt whether a case is made out in the bill sufficient to support them. I prefer to put my decision on the ground that the facts stated in the bill show, in my opinion, a combination to create a monopoly prohibited by section 7.

The case of Northern Securities Co. v. United States, 193 U. S. 197, 24 Sup. Ct. 436, 48 L. Ed. 679, is quite analogous to this case. It involved the construction of a federal statute, the so-called Sherman anti-trust act; while this case involves the construction of the New York statutes cited. But the principles involved are similar, and the reasoning of Mr. Justice Harlan in the prevailing opinion has much application to the facts in the case at bar.

There are various other grounds of demurrer, mostly of a technical kind. One is that the bill is multifarious, because it unites claims in favor of the complainant with other claims in favor of the Metropolitan Securities Company. But I do not see that the complainant sues on any claim in favor of the Metropolitan Securities Company. He sues in behalf of himself and of any other stockholders who may join in the suit. I cannot regard such a bill as multifarious. It is also asserted that the complainant does not come into equity with clean hands. This point is based on the fact that he sues as a stockholder in the Metropolitan Securities Company, which, it is alleged, is a holding company organized to create the same kind of a monopoly in street railroad stocks as the monopoly attacked in this suit. But, in the first place, the combination of all the street railroads in New York did not create such a monopoly as that alleged in the bill. There remained competition between them and the elevated roads and the subway. Moreover, the question whether the taking over of the stock of the New York City Railway by the Metropolitan Securities Company constituted a monopoly is not before the court. When it comes before the court it will be time enough to decide it.

Another ground of demurrer is that the provisions of rule 20 and rule 94 requiring allegations to be inserted in the bill showing what efforts have been made by the complainant to secure action by the officers of the Metropolitan Securities Company, and showing that the suit is not collusive, are not complied with. It would perhaps have been better to have avoided any such objection by inserting the usual allegations in the terms of the rules; but, in my opinion, the facts alleged in the bill sufficiently show that the suit is not collusive, and that any application to the officers of the company to bring this suit would have been futile.

. It is also asserted that the complainant is precluded from maintaining this action by his delay in bringing this suit. The Interborough Metropolitan Company was organized in February, 1906. An application was made to the Attorney General of New York to begin an action in the name of the people of the state to declare the proposed combination illegal. Naturally and properly, individual stockholders would await the result of such an application before suing themselves. The Attorney General denied the application, and delivered a

written opinion, which is dated March 1, 1907. The bill in this case was verified in December, 1906. Whether this suit was begun before the Attorney General's decision was announced, or whether his opinion was written after such announcement, I am not informed; but in any point of view I do not think that the complainant was guilty of any laches in beginning his action which would deprive him of the right to prosecute this suit.

I should, perhaps, add that I have read the opinion of the Attorney General. With entire respect for that opinion, I am not able to concur with it.

My conclusion is that each of the demurrers should be overruled, with leave to the defendants to answer within 30 days upon payment of costs.