ATTORNEY GENERAL v. CONSOLIDATED GAS CO. OF NEW YORK.

(Supreme Court, Appellate Division, First Department.    February 14, 1908.)

1. CORPORATIONS—FORFEITURE OF FRANCHISE—PROCEEDINGS TO ENFORCE.

Under Code Civ. Proc. § 1798, authorizing the Attorney General to apply to the court for leave to bring an action to vacate the charter of a corporation, the granting of leave rests in the discretion of the court, and is not a matter of course.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, §§ 2431–2434.]

2. MONOPOLIES—COMBINATIONS PROHIBITED.

Stock Corporation Law, Laws 1890, p. 1073, c. 564, § 40, as amended by Laws 1902, p. 1751, c. 601, permits a stock corporation to purchase stock of another corporation, if authorized by its certificate of incorporation, or if the corporation whose stock is purchased is engaged in a business similar to that of the purchasing corporation. Stock Corporation Law, Laws 1890, p. 1069, c. 564, § 7, as amended by Laws 1897, p. 313, c. 384, provides that no corporation shall combine with any corporation or person for the creation of a monopoly or the unlawful restraint of trade or for the prevention of competition in any necessary of life, and Laws 1897, p. 310, c. 383, and Laws 1899, p. 1515, c. 690, were enacted to destroy monopolies and prevent combinations in restraint of competition or the free pursuit of any lawful business. Held, that the consolidation under Laws 1884, p. 448, c. 367, of six companies engaged in the manufacture and sale of gas and electricity into a corporation to continue such business, and the subsequent purchase by such consolidated company of all, or a controlling interest in, the shares of other similar corporations, purchased to prevent competition, did not create a monopoly in contravention of said acts, as it left the field open to any company that might be organized with the approval of the commission provided for by Public Service Commission Law, Laws 1907, p. 889, c. 429.

3. CORPORATIONS—FORFEITURE OF FRANCHISE—MISUSE OF POWERS.

The statutes under which several gas companies were organized gave them authority to lay mains in the streets by first obtaining permission of the municipality, and the municipality in giving such permission limited the right as to time and place. The companies were later consolidated under Laws 1884, p. 450, c. 367, § 5, providing that the new corporation should enjoy the same rights and to the same extent as were had by the several companies. Held, that the contention that with the expiration of the time limited to lay mains the right to use those already laid concerned the municipality alone, and the further use of such mains without consent of the municipality was not the exercise of a franchise not conferred by law within Code Civ. Proc. § 1798, authorizing the Attorney General to apply for leave to bring action to vacate the corporation's charter.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 2395.]

4. SAME.

On application under Code Civ. Proc. § 1798, by the Attorney General for leave to bring action to vacate the charter of a gas company for forming a combination to prevent competition and for exercising powers not conferred by law, the court will take into consideration that it is not alleged that there has been a resulting injury to the public from the acts complained of, and that it appears that injury would follow the vacation of the charter.

Laughlin, J., dissenting.

Appeal from Special Term.

Application by the Attorney General for leave to bring an action against the Consolidated Gas Company to vacate its charter.    From

an order denying the application (56 Misc. Rep. 49, 106 N. Y. Supp. 407), he appeals.  Affirmed.

Argued before PATTERSON, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

William Delford, for appellant.
James M. Beck, for respondent.

SCOTT, J.  In this proceeding the Attorney General seeks the leave of the court to bring an action against the Consolidated Gas Company of New York to procure a judgment vacating the charter and annulling the corporate existence of the company.  The present appeal is from an order at Special Term refusing to give the desired leave.  The application is made under Code Civ. Proc. § 1798, which authorizes the Attorney General to bring such an action, in certain cases, upon obtaining leave so to do from the court.  Whether or not such leave should be given rests in each case in the sound discretion of the court, and is not to be given as a matter of course.  Matter of the Attorney General, 81 Hun, 541, 30 N. Y. Supp. 1093.  Weight undoubtedly is to be given to the fact that the Attorney General has felt it to be his duty to apply for the required leave, but the court is also charged with a duty in the premises to consider seriously whether upon the facts presented the public interests require that such an action should be brought.  In the present case we are not embarrassed by any material dispute as to the facts.

It appears from the petition that the Consolidated Gas Company of New York was organized in 1884 by the consolidation of six domestic gaslight companies then engaged in manufacturing and selling gas in the city of New York, in which business the Consolidated Gas Company has engaged since its organization.  This consolidation was effected under the provisions of chapter 367, p. 448, Laws 1884, and, so far as appears, all the formalities prescribed by that act were duly complied with.  Subsequently, and at divers times, the Consolidated Gas Company has acquired, by purchase, either the whole or a majority of the capital stock of a number of electric lighting and gaslighting companies, all of which it controls by virtue of its said purchases of stock.  The grounds upon which the Attorney General seeks to annul its charter are (1) that it has violated provisions of law whereby it has forfeited its charter and become liable to be dissolved by the abuse of its corporate powers; and (2) that it has exercised and is exercising franchises not conferred upon it by law.

The charge that the Consolidated Gas Company has violated provisions of law, and thereby forfeited its charter, is based upon its purchase of the stock of other, and, possibly, competing, gas and electric lighting companies, the effect of which it is said is to create a monopoly and prevent competition.  It is not to be denied that section 40 of the stock corporation law (Laws 1890, p. 1073, c. 564), which was re-enacted with an amendment by chapter 601, p. 1751, Laws 1902, in terms permitted the purchases of stock.  It provides that:

"Any stock corporation * * * may purchase, acquire, hold and dispose of the stock, bonds * * * of any corporation * * * if authorized so

to do by a provision in the certificate of incorporation * * * or if the corporation whose stock is so purchased * * * is engaged in a business similar to that of such stock corporation."

And under section 61, subd. 3, of the transportation corporation act (Laws 1890, p. 1147, c. 566), it seems that the Consolidated Company could have lawfully consolidated with the several companies of which it bought the stock. The learned Attorney General insists, however, that this authority to purchase stock in and to consolidate with other corporations must be exercised, in order to be lawful, in such a way as not to contravene section 7 of the stock corporation law, as amended by Laws 1897, p. 313, c. 384, or the so-called "Anti-Monopoly Acts of 1897 and 1899" (chapter 383, p. 310, Laws 1897; chapter 690, p. 1515, Laws 1899). Section 7 of the stock corporation law provides that:

"No domestic stock corporation, and no foreign corporation doing business in this state, shall combine with any other corporation or person for the creation of a monopoly, or the unlawful restraint of trade, or for the prevention of competition in any necessary of life."

The so-called "Anti-Monopoly Acts" have frequently been before the courts. Their object is "to destroy monopolies in the manufacture, production and sale in this state of commodities in common use, to prevent combinations in restraint of competition in the supply or price of such commodities, or in restraint of the free pursuit of any lawful business, trade or occupation. The act in this respect is little more than a codification of the common law upon the subject." Matter of Davies, 168 N. Y. 89–101, 61 N. E. 118–120, 56 L. R. A. 855. Conceding, as we well may, the general proposition that the power given by section 40 of the general corporation law must be so exercised as not to contravene the other provisions of law above cited, it still remains to be considered whether or not the purchase by the Consolidated Company did, in fact, contravene these statutes. It may be conceded, as was doubtless the fact, that the purpose of acquiring a controlling interest in the several corporations mentioned in the petition was to prevent competition, so far as possible, by centering in the hands of the Consolidated Company the business of furnishing illuminating gas and electricity, in so far as that business had been entered upon by the companies whose stock was purchased. But a contract or purchase of stock for the purpose of preventing competition is not of itself necessarily illegal. Rafferty v. Buffalo City Gas Co., 37 App. Div. 618, 56 N. Y. Supp. 288; Diamond Match Company v. Roeber, 106 N. Y. 473–483, 13 N. E. 419, 60 Am. Rep. 464. What is prohibited is the creation of a monopoly, and establishing such a competition as will result in limiting the supply and enhancing the cost of the commodity dealt in. In no sense can the consolidation of the lighting companies in the city of New York into a single corporation be said to create such a monopoly for it gains thereby no exclusive right. The field is still open to any other company that can obtain the necessary consents from the constituted authorities, and neither the production nor the price can be arbitrarily fixed by the Consolidated Company. In this respect there is a very clear distinction between a company supplying gas or electricity and a corporation or combination of producers who

deal in ice, envelopes, bluestone, milk, sheep, and lambs, coal, and lard, as to all of which our courts have condemned combinations organized for the purpose of controlling output and fixing prices.)

The kind of combinations which the law forbids is well described in the leading case of Cummings v. Union Bluestone Co., 164 N. Y. 401, 58 N. E. 525, 52 L. R. A. 262, 79 Am. St. Rep. 655, as a combination which threatens "a monopoly with which the individual would be practically powerless to compete, and the many consumers who would be severally exposed and coerced would be either compelled to submit to its exactions, or to forego the purchase of the commodity of customary use needful for them, and but for this monopoly obtainable in the market at a reasonable price. * * * And hence it is that contracts by which the parties to them combine for the purpose of creating a monopoly in restraint of trade to prevent competition and thus to limit production to increase prices and maintain them are contrary to sound public policy and are void." (In the case of the Consolidated Gas Company it cannot, as a result of its control of the business of furnishing light, either limit production or increase prices and maintain them, because both of those matters are within the control of the Legislature. It is within the power of that body, and it has frequently used the power, to fix the maximum rate which may be charged to consumers, and it is well settled that any person within the territory served by a gas or electric light company is entitled to be furnished with such gas or electricity as he requires upon payment of the statutory price therefor, and can compel the company so to furnish it. That a single company thus regulated by law as to price and production does not offend against the anti-monopoly laws, even although its field of operation extends over a whole city, seems to be quite clear. Competition between two or more companies, each occupying exclusively a separate field of operation could benefit no one. A competition which would operate to reduce prices must be between companies occupying the same field, and, while the consolidation of control effected by the purchases of stock in other companies by the Consolidated Company does not necessarily prevent such competition, it is the settled policy of the state to discourage competition of this character, and the reasons for the adoption of this policy have been clearly stated by the Court of Appeals. People ex rel. N. Y. Electric Lines Company v. Ellison, 188 N. Y. 523, 81 N. E. 447. By section 11 of the gas and electric commission act of 1905 (chapter 737, p. 2096, Laws 1905), it was provided that no corporation for the manufacture and supply of gas should exercise its power without first obtaining a certificate of authority from the commission, and the commission was authorized to withhold its certificate "if the territory within which such corporation proposes to operate is already supplied by an ample and well constructed system, furnishing the service which such corporation proposes to furnish, at a fair and reasonable rate"; and, while the act containing this provision has been superseded and repealed by the public service commission law (chapter 429, p. 889, Laws 1907), that act continues the prohibition of the exercise of its powers by any gas or electrical corporation until it shall first have obtained the permission and approval of the proper commission provided for by the act. We are therefore of the opinion

that the organization of the Consolidated Gas Company of New York, under the provisions of chapter 367, p. 448, Laws 1884, was lawful and valid, and its subsequent purchase of the stock of the companies named in the petition was authorized by section 40 of the stock corporation law, and that neither by the organization of the company nor by its purchase of the stock of other companies was an unlawful monopoly created within the meaning of section 7 of the stock corporation law or of the anti-monopoly act of 1899.)

The second ground upon which the Attorney General seeks to vacate the charter of the Consolidated Gas Company, and thus terminate its corporate existence, is that:

"It has exercised and is exercising franchises not conferred upon it by law."

The basis for this contention is that certain consents or permits issued by the municipal authorities of the city of New York to the constituent companies by the consolidation of which the Consolidated Company was created were so framed as to contain a limit of time during which they should continue to be effective, and that that time has expired. Section 5, c. 367, p. 450, Laws 1884, under which the Consolidated Gas Company was organized by a combination of six constituent companies, provided that:

"The new corporation shall hold and enjoy the same and all the rights of property franchise and interests in the same manner and to the same extent, as if the several companies so consolidated had continued to retain the title and transact the business of such corporation."

The several statutes under which the constituent companies were organized gave to them power and authority to manufacture, distribute, and sell gas, with incidental power and authority to lay pipes or mains in the public streets and avenues, subject, however, to the qualification that no street or highway should be dug into for the purpose of laying such mains without the consent of the municipal authorities first had and obtained. The franchise to be a corporation and to transact business comes from the state, as does also the right, incidental and necessary to the enjoyment of the franchise, to lay pipes and mains in the streets, to maintain them when laid so long as necessary for the beneficial enjoyment of the corporate franchise, and for that purpose to dig into and open the streets. The state might have given authority to open the streets without any consent from the local authorities, and has done so in many cases, but in general, and particularly in the case of the constituent companies mentioned in the petition, it has required the consent of the local authorities to be obtained before a street surface should be disturbed for the purpose of laying gas mains. In these cases the right to lay mains comes from the state; permission to exercise the right being made dependent upon the consent of the local authorities. It was competent for the local authorities to give a general consent covering a fixed period of time, or running during the life of the corporation, or to give consents from time to time as the necessity for opening the street surface arose. The first alternative was chosen, and to each company was given a general consent, limited as to areas to which it applied, and as to the time during which it should remain effective. These periods of time have expired; and while it was un-

doubtedly competent for the local authorities to extend the time, or to have granted new consents, it appears that this had not been done, unless acquiescence amounts to such a consent. People ex rel. N. Y. & Richmond Gas Co. v. Cromwell, 89 App. Div. 291, 85 N. Y. Supp. 878. The contention of the Attorney General is that with the expiration of the time limited by the municipal consent for the laying of pipes then also expired the right to maintain and use those already laid. Although we do not consider it necessary to pass upon this question, we may say that the arguments in favor of the Attorney General's contention in this regard appears to us to be far from conclusive. It is sufficient to say that the matter is one for consideration by the municipal authorities, and is no concern of the state (People v. Equity Gaslight Co., 141 N. Y. 232, 36 N. E. 194); and even if it should be considered that the Consolidated Gas Company needed a further consent from the municipal authorities to open streets, or to maintain the pipes and mains already placed therein, its failure to apply and obtain such consents would not amount to the exercise of franchises not conferred upon it by law within the meaning of those words as used in section 1798 of the Code of Civil Procedure. We are therefore of the opinion that upon the conceded facts no case is made which would justify the court, in the exercise of a sound discretion, in giving its leave to bring such an action as the Attorney General desires to commence. In arriving at this conclusion, we are aided by a consideration of the fact that the petition fails to show, or even to allege that, as a result of the acts complained of any specified injury has been done to the people of the state at large, or to the persons who are obliged to purchase gas and electricity from the Consolidated Company. As has already been shown, the power which the state retains and has exercised to fix a reasonable price upon the commodity, and to compel its delivery to any person desiring to purchase it, removes any danger of the especial vice which attaches to monopolies in other articles in common use, and, as has also been shown, the consolidation of control brought about by the purchases of stock complained of does not in any proper sense create such a monopoly as the common law and our statutes condemn. No public purpose would thereby be served by such a judgment as the Attorney General seeks to apply for, while most serious disaster would flow from a judgment which would result in depriving the inhabitants of the city of New York of gas and electricity for lighting purposes even for a limited period. A judgment vacating the charter of the Consolidated Company would at once prevent it from carrying on the business of manufacturing and selling gas and electricity. So far as we are aware, there is no other company ready to take up the business at once and the erection and installation of the necessary plant to supply the needs of a great city would necessarily take a considerable time.

The order appealed from must be affirmed, with $10 costs and disbursements. All concur, except LAUGHLIN, J., who dissents.

LAUGHLIN, J. (dissenting). I agree with the majority of the court that the continuance of the use of the gas mains and lateral house connections in the streets of this city, after the period specified in the

grants made by or consents given by the local authorities, affords no ground for a forfeiture of the franchises which the Consolidated Gas Company received from the state, for, in my opinion, such consents or grants are not franchises within the fair intent and meaning of the provisions of the Code of Civil Procedure with respect to annulling the charter of a corporation, but are more in the nature of contracts between the gas companies and the city, and questions arising with respect thereto are to be adjusted between them and the city without the intervention of the state.

I am of opinion, however, that the learned Attorney General, in charging and showing that the Consolidated Gas Company purchased a controlling interest in other gas companies and in electric light companies supplying gas or electricity for light, heat, or power in the borough of Manhattan or the Bronx for the purpose of obtaining a monopoly in the manufacture and sale of gas or in generating and furnishing electricity for light, heat, or power, which are commodities in common use, and with a view to stifling competition in the manufacture or generation or sale thereof, presents a question of law as to whether the Consolidated Gas Company has not violated the provisions of section 1, c. 690, p. 1514, Laws 1899, being the "Anti-Trust Act," so called, and of section 7 of the stock corporation law, being chapter 564, p. 1069, Laws 1890, and of section 168 of the Penal Code, for which its charter may be annulled.

The case of Rafferty v. Buffalo City Gas Company, 37 App. Div. 618, 56 N. Y. Supp. 288, is not, I think, decisive of these questions, and Judge Holt in the United States Circuit Court, Southern District of New York, in Burrows v. Interborough Metropolitan Company et al. (C. C.) 156 Fed. 389, recently held with the contention of the Attorney General that section 40 of the stock corporation law, which authorizes one stock corporation to purchase and hold stock in certain other stock corporations engaged in a similar business, is limited and qualified by the provisions of section 7 of the same act and by the provisions of section 1 of the anti-trust law, so called. I refrain at this time from agreeing or disagreeing with Judge Holt's construction, because the question is not presented for decision on the merits now; but I think that the questions are of sufficient public importance to require that they shall be decided by the Court of Appeals, which can only be done as matter of right by permitting the Attorney General to bring an action. If such leave be not granted, then I think that this court should either modify the order of the Special Term denying the Attorney General's motion for leave to sue by reciting that the denial is not in the exercise of the discretion of the court, but upon the ground that the facts presented do not show a cause of action, or else certify to the Court of Appeals the question as to whether section 40 of the stock corporation law is modified or qualified by section 7 thereof or by section 1 of the anti-trust law, so called, in either of which cases I think the Court of Appeals would decide the question upon the merits. See Hewitt v. Wood et al., 67 N. Y. 394; People ex rel. Lehmaier v. Interurban St. Ry. Co., 177 N. Y. 296, 69 N. E. 596; Matter of Thurber, 162 N. Y. 244, 56 N. E. 631; Schneider v. City of Rochester, 155 N. Y. 619, 50 N. E. 291; Birge v. B. I. B. Co., et al., 133 N. Y. 477,

31 N. E: 609, and cases cited; Matter of Davies, 168 N. Y. 89, 61 N. E. 118, 56 L. R. A. 855.

If the corporation has violated either of these statutes its charter ought to be annulled, and I think that the Legislature did not intend to authorize the court to refuse leave to bring the action when the court is of opinion that the action ought not to be brought, assuming that it could be successfully maintained. I am of opinion that the Legislature intended to vest the Attorney General with authority to determine, in his discretion, whether or not an action for the annulment of a charter of a corporation should be brought where a cause of action for annulment exists; and it only requires leave of the court to the end that the court might determine whether a cause of action exists for the annulment of the charter so that the corporation might not be put to the trouble and expense of a litigation, unless the facts presented by the Attorney General show prima facie a cause of action, or present a question of such gravity as to render it proper that it be decided upon a trial, rather than upon the motion; and this construction is emphasized by the practice of limiting the leave, by the order, to the prosecution of the cause of action arising on the facts presented on the application for leave to sue. Matter of Attorney General, 81 Hun, 541, 30 N. Y. Supp. 1093; Matter of Attorney General, 50 Hun, 511, 3 N. Y. Supp. 464; People v. Boston, H. T. & W. Ry. Co., 27 Hun, 528; People ex rel. Gould v. Met. Telegraph Co., 2 Civ. Proc. Rep. (McCarthy's) 295. If section 7 of the stock corporation law or section 1 of the anti-trust law, so called, supra, be applicable to the defendant, I do not agree with the majority of the court that the petition of the Attorney General does not show that they have been violated, and, on the contrary, I am of opinion that the facts stated in the petition present a prima facie case of a violation of both statutes, assuming them to be applicable to the defendant; that is to say, it appears presumptively that the controlling interest in the other corporations was purchased for the purpose of creating a monopoly and restraining competition in the business in which the corporations are engaged.

I therefore vote for reversal of the order, and for granting leave to bring the action.