### In re ATTORNEY GENERAL.

(Supreme Court, Appellate Division, First Department. May 8, 1908.)

MONOPOLIES—COMBINATIONS PROHIBITED—RAILROADS.

    Stock Corporation Law, Laws 1890, p. 1069, c. 564, § 7, as amended by Laws 1897, p. 313, c. 384, prohibiting combination of any domestic stock corporation, or any foreign corporation, doing business in the state, with any other corporation or person for the creation of a monopoly for the unlawful restraint of trade or for the prevention of competition in any necessity of life, and Laws 1899, p. 1514, c. 690, declaring illegal every contract or combination whereby a monopoly in the manufacture, production, or sale of an article of common use is, or may be created or maintained, or whereby competition in the supply or price of any commodity is, or may be, restrained or prevented, or whereby, for the purpose of creating or maintaining a monopoly of the manufacture, production, or sale of any commodity, the free pursuit of any lawful business, trade, or occupation is or may be restricted or prevented—have no application to mergers of street railroads, especially in view of Laws 1839, p. 195, c. 218, Laws 1885, p. 525, c. 305, Laws 1890, pp. 1106–1107, c. 565, §§ 78, 80, as amended by Laws 1892, p. 1398, c. 676, relative to leases, mergers, and contracts between railroads and street railroads, and Corporation Law 1890, p. 1073, c. 564, § 40, as amended by Laws 1902, p. 1751, c. 601, relative to acquisition by stock corporations of the stock of other corporations.

Appeal from Special Term.

Application by the Attorney General for leave to commence an action against the Interborough Metropolitan Company to vacate its charter and annul its corporate existence. Application denied (56 Misc. Rep. 128, 106 N. Y. Supp. 416), and the Attorney General appeals. Affirmed.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

William A. De Ford, Deputy Atty. Gen., and William S. Jackson, Atty. Gen., for appellant.

James L. Quackenbush (Paul D. Cravath, of counsel, George W. Wickersham, and J. P. Cotton, Jr., on the brief), for respondent.

CLARKE, J. The questions arising upon this appeal have been so recently and so thoroughly considered in the Matter of the Attorney General for Leave to Commence an Action Against the Consolidated Gas Company of New York, 124 App. Div. 401, 108 N. Y. Supp. 823, that further consideration by this court seems unnecessary, except to point out that the grounds for the present application seem more unsubstantial than in the Gas Company Case, for in the Gas Case a commodity was manufactured and sold, while in the present case transportation only is furnished. Railroads, because they were common carriers and because ex necessitate rei they had conferred upon them the power to condemn property under the doctrine of eminent domain, have been peculiarly the subject of legislation. The policy of the state towards such corporations has been illustrated by a continued series of enactments regulating and controlling them to a minute degree. In the face of those enactments and that control, it seems to us a violent warping of the intention of the Legislature to attempt to apply the provisions of section 7 of the stock corporation law (Laws 1890, p. 1069, c. 564, as amended by Laws 1897, p. 313, c. 384), that "no do-

mestic stock corporation, and no foreign corporation, doing business in this state shall combine with any other corporation or person for the creation of a monopoly for the unlawful restraint of trade or for the prevention of competition in any necessity of life," and chapter 690, p. 1514, Laws 1899, which provides that "every contract, agreement, arrangement or combination whereby a monopoly in the manufacture, production or sale in this state of any article or commodity of common use is or may be created, established or maintained, or whereby competition in this state in the supply or price of any such article or commodity is or may be restrained or prevented, or whereby for the purpose of creating, establishing or maintaining a monopoly within this state of the manufacture, production or sale of any such article or commodity, the free pursuit in this state of any lawful business, trade or occupation is or may be restricted or prevented, is hereby declared to be against public policy, illegal and void," to the railroads of the state.

Chapter 218, p. 195, Laws 1839, authorized one railroad corporation to lease the lines of another or to enter into traffic contracts. It applied to both street and steam roads. Ingersoll v. Nassau Electric Railroad Co., 157 N. Y. 453, 52 N. E. 545, 43 L. R. A. 236; Griffin v. Interurban Street Railroad Co., 179 N. Y. 438, 72 N. E. 513. It permitted the leasing of parallel and competing railroads. Beveridge v. New York Elevated Railroad, 112 N. Y. 1, 19 N. E. 489, 2 L. R. A. 648. Chapter 305, p. 525, Laws 1885, granted the right to street railroads to lease or make traffic contracts subject to the burden of exchange of transfer facilities between the connecting lines. Griffin v. Interurban, supra. In 1890 the Legislature passed the railroad law applicable to both steam and surface railroads. Laws 1890, p. 1082, c. 565. Sections 78, 79, and 80 related to steam lines, and section 80 contained a prohibition against the leasing of parallel and competing roads, but that section did not apply to street railroads. This was amended by chapter 676, p. 1382, Laws 1892, by providing that:

"No railroad corporation or corporations owning or operating railroads whose roads run on parallel or competing lines, except street surface railroad corporations, shall merge or consolidate or enter into any contract for the use of their respective roads or lease the same the one to the other, unless the Board of Railroad Commissioners of the state, or a majority of such board shall consent thereto."

Under section 78, c. 565, p. 1106, Laws 1890, and section 80 as amended, supra, there was an absolute grant of power for the lease or merger or contract for the use of parallel or competing street railways and a similar grant for all other railroads conditioned only on the consent of the railroad commission. That was the law at the time of the formation of the Interborough Metropolitan Company. Under these provisions, this court held valid a lease of the property and franchises of the Metropolitan Street Railroad Company to the Interurban Street Railway Company for a period of 999 years, which lease contemplates a virtual abandonment of everything connected with the lessor road and the vesting of it in the lessee, and brought under one control practically all the street surface lines of Manhattan.

Wormser v. Metropolitan Street Railway Co., 98 App. Div. 29, 90 N. Y. Supp. 714, affirmed 184 N. Y. 83, 76 N. E. 1036, 112 Am. St. Rep. 596.

At the time the respondent company was formed, the Legislature had passed laws governing the rate of fare and providing for transfers. By section 79 of the railroad law in force at the time of the incorporation of the respondent company, it was provided that a railroad corporation which was the lessee of another railroad corporation might take a surrender or transfer of all the capital stock of the lessor road upon agreed terms and issue its stock therefor, which section must be read in conjunction with section 80 quoted, supra, and section 58 of the stock corporation law, a general statute allowing merger of any stock corporation with another stock corporation engaged in similar business. Section 40, c. 564, p. 1073, Stock Corporation Laws 1890, amended by chapter 601, p. 1751, Laws 1902, provides that:

"Any stock corporation * * * may purchase, acquire, hold and dispose of the stock, bonds * * * of any corporation * * * if authorized so to do by a provision in the certificate of incorporation * * * or if the corporation whose stock is so purchased * * * is engaged in a business similar to that of such stock corporation."

It would seem from the foregoing citations of the laws and the cases that the precise thing of which the Attorney General complains has been expressly authorized by laws which have been interpreted and upheld by the courts of the state.

The consideration of this legislation and of these cases, in addition to the views expressed by us in the Gas Company Case, lead to the conclusion that there is no warrant upon the facts set forth and under the law for the proposed action by the Attorney General, and that, therefore, in the exercise of that discretion which the law has imposed upon the Supreme Court, it is our duty to affirm the order of the Special Term refusing the application for leave to institute the action; and it is so ordered, with $10 costs and disbursements. All concur.