The People of the State of New York ex rel. The New York Edison Company, Appellant, *v.* William R. Willcox et al., Constituting the Public Service Commission of the State of New York for the First District, et al., Respondents.

Public Service Commissions Law — electric light, heat and power corporations — application of such a corporation for leave to issue stocks and bonds — such application cannot be granted unless the corporation has previously obtained from the proper commission its permission to construct and maintain its conduits, lines and other appliances for the distribution of electricity — when another electric light, heat and power company, which has intervened in the proceeding, may review by certiorari the order of the commission authorizing the petitioning corporation to issue securities.

1. It is the settled policy of the state to withdraw the unrestricted right of competition between corporations occupying through special consents or franchises the public streets and places and supplying the public with their products or utilities which are well nigh necessities.   This policy is embodied in the Public Service Commissions Law which intends to bring under its restrictions and

regulation, in so far as is lawful, the franchises, powers and rights of the corporations existing at its enactment and to which it relates and under the control of the commissions all construction of their plants.

2. An electric light and power company in the city of New York instituted a proceeding by petition to the public service commission in the first district for authority to issue stocks and bonds under section 69 of the Public Service Commissions Law (L. 1907, ch. 429) in which it alleged as the uses to which the securities to be issued were to be put, the acquisition of property upon which to construct power houses and sub-stations, their construction and the purchasing and laying of underground cables and ducts. Authority had not been obtained as required by section 68 of that law which then provided that no such corporation should "begin construction or exercise any right or privilege under any franchise hereafter granted, or under any franchise heretofore granted but not heretofore actually exercised without first having obtained the permission and approval of the proper commission." *Held*, that the language of section 69 establishes the conclusion that the commissions are not in any case empowered to authorize the issue of securities upon the application of a corporation which has not received the permission and approval provided in section 68 or is not validly superior to the provisions of that section. The commission had not the power to authorize the issue of the stock and bonds for the reason that the petitioner had not its permission and approval to begin the construction of its plant, although it had obtained its franchise previous to the passage of the act.

3. The relator, a company which has for many years furnished electricity for light, heat and power in the boroughs of Manhattan and the Bronx, is directly interested in a proceeding which involves the consideration and determination of the present right of the petitioner to place wires for those uses in those boroughs or acquire property or construct a plant to be used in competition with it. The commission legally permitted it to become a party to the proceeding and the determination adverse to it after its intervention is reviewable under certiorari upon its application as the party aggrieved thereby.

*People ex rel. N. Y. Edison Co.* v. *Willcox,* 151 App. Div. 832, reversed.

(Argued October 7, 1912; decided December 31, 1912.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered

July 24, 1912, which dismissed a writ of certiorari and affirmed a determination of the defendant Public Service Commission authorizing the defendant Long Acre Electric Light and Power Company to issue stocks and bonds.

The facts, so far as material, are stated in the opinion.

*John A. Garver, Morgan J. O'Brien* and *Henry J. Hemmens* for appellant.   Competition is not permitted in the case of public service corporations, regulated by statute, unless the public interest requires it.   (*Willcox* v. *C. G. Co.*, 212 U. S. 19; *Weld* v. *G., etc., Comrs.*, 197 Mass. 556; *Matter of Attorney-General*, 124 App. Div. 401; *People ex rel. Pub. Serv. Com.* v. *Long Acre Co.*, 137 App. Div. 810; *People ex rel. N. Y. El. Lines Co.* v. *Ellison*, 188 N. Y. 523; *People ex rel. Steward* v. *R. R. Comrs.*, 160 N. Y. 202; *People ex rel. N. Y. C. & H. R. R. R. Co.* v. *P. S. Comm.*, 195 N. Y. 157; *Matter of N. Y. El. Lines Co.*, 201 N. Y. 321.)   The approval of the commission is required before the construction of the plant, even though the franchise was previously exercised.   (*People ex rel. N. Y. El. L. Co.* v. *Ellison*, 188 N. Y. 523; *P. E. L. Co.* v. *Potsdam*, 49 Misc. Rep. 18; 113 App. Div. 894; *People ex rel. W. F. Ins. Co.* v. *Davenport*, 91 N. Y. 574; *Lyon* v. *M. Ry. Co.*, 142 N. Y. 298; *Matter of Locust Ave.*, 185 N. Y. 115; *People ex rel. B., etc., Co.* v. *Stevens*, 203 N. Y. 7.)   There is no finding that the franchise had ever been exercised. (*People ex rel. Loughran* v. *R. R. Comrs.*, 158 N. Y. 421; *People ex rel. Steward* v. *R. R. Comrs.*, 160 N. Y. 202.)   There has been no lawful exercise of the franchise. (*U. S. Illuminating Co.* v. *Hess*, 3 N. Y. Supp. 777; *Am. Rapid Tel. Co.* v. *Hess*, 125 N. Y. 641; *People ex rel. N. Y. El. L. Co.* v. *Ellison*, 188 N. Y. 523; *E. R. E. L. Co.* v. *Grant*, 20 J. & S. 552; *People ex rel. N. Y. E. L. Co.* v. *Squire*, 107 N. Y. 593; 145 U. S. 175.)   The relator is a party aggrieved.   (*People ex rel. Loughran* v. *R. R. Comrs.*, 158 N. Y. 421; *People ex rel. Steward*

v. *Railroad Comrs.*, 160 N. Y. 202; *Matter of Wood*, 99 App. Div. 334; 181 N. Y. 93; *People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Pub. Serv. Comm.*, 195 N. Y. 157, 166; *State ex rel. People's Gaslight Co.* v. *Jersey City*, 26 N. J. L. 297.)

*Charles F. Brown* and *J. S. L'Amoreaux* for respondents. As the commission had no power to consider the question of public necessity or convenience, appellant is not a person aggrieved by the determination sought to be reviewed, and hence the appeal should be dismissed. (Code Civ. Pro. § 2127; *Ross* v. *Wigg*, 100 N. Y. 243; *People* v. *Pub. Serv. Com.*, 195 N. Y. 157; *People* v. *R. R. Com.*, 160 N. Y. 202; *People ex rel. Blakeslee* v. *Comrs.*, 135 N. Y. 447.) These proceedings and the rights of the Long Acre Company thereunder are governed by the Public Service Commissions Law existing when the petition of the Long Acre Company was filed in February, 1908, unaffected by the amendment of 1910 (Chap. 480). (*N. Y. C. & H. R. R. R. Co.* v. *Williams*, 199 N. Y. 108; *Fletcher* v. *Peck*, 6 Cranch, 87; *Hall* v. *Brennan*, 140 N. Y. 409; *McMaster* v. *State*, 103 N. Y. 547; *Benton* v. *Wickwire*, 54 N. Y. 226; *Sayre* v. *Wisner*, 8 Wend. 661; *Calkins* v. *Calkins*, 3 Barb. 305; *Dash* v. *Van Kleck*, 7 Johns. 477; *People* v. *Gilroy*, 67 Hun, 323; *Jarvis* v. *Jarvis*, 3 Edw. Ch. 462.) Assuming that the act of 1910 (Chap. 480, § 68) does apply to this proceeding, a certificate of public necessity and convenience was not required for the reason that the franchise under discussion had been "theretofore exercised," and did not come within the class of franchises the exercise of which "shall have been suspended for more than one year." (*Pearsall* v. *G. N. Ry. Co.*, 161 U. S. 646; *People ex rel. L. A. El. L. & P. Co.* v. *P. S. Comm.*, 137 App. Div. 810.)

COLLIN, J. The determination of the public service commission, which the certiorari brought under review, was

made in the proceeding instituted by the respondent, the
Long Acre Electric Light and Power Company, to obtain
authority to issue stock and bonds under section 69 of the
Public Service Commissions Law. The first question to
be considered is whether or not we should dismiss the
appeal of the relator, the New York Edison Company,
and the answer to that depends, in turn, upon the ques-
tion whether the relator was, within the meaning of sec-
tion 2127 of the Code of Civil Procedure, aggrieved by the
determination. Section 69 of the Public Service Commis-
sions Law (L. 1907, ch. 429), provides: " A gas corpora-
tion or electrical corporation organized or existing, or here-
after incorporated, under or by virtue of the laws of the state
of New York, may issue stocks, bonds, notes or other evi-
dence of indebtedness payable at periods of more than
twelve months after the date thereof, when necessary for
the acquisition of property, the construction, completion,
extension or improvement of its plant or distributing sys-
tem, or for the improvement or maintenance of it service
or for the discharge or lawful refunding of its obliga-
tions, provided and not otherwise that there shall have
been secured from the proper commission an order author-
izing such issue, and the amount thereof, and stating
that, in the opinion of the commission, the use of the
capital to be secured by the issue of such stock, bonds,
notes or other evidence of indebtedness is reasonably
required for the said purposes of the corporation. For
the purpose of enabling it to determine whether or not it
should issue such an order, the commission shall make
such inquiry or investigation, hold such hearings and
examine such witnesses, books, papers, documents or con-
tracts as it may deem of importance in enabling it to
reach a determination. Such gas corporation or electri-
cal corporation may issue notes, for proper corporate pur-
poses and not in violation of any provision of this or of
any other act, payable at periods of not more than twelve
months without such consent; but no such notes shall,

in whole or in part, directly or indirectly be refunded by any issue of stock or bonds or by any evidence of indebtedness running for more than twelve months without the consent of the proper commission. \* \* \* "

When the present proceeding was commenced, section 68 of the Public Service Commissions Law contained this provision: "No gas corporation or electrical corporation incorporated under the laws of this or any other state shall begin construction, or exercise any right or privilege under any franchise hereafter granted, or under any franchise heretofore granted but not heretofore actually exercised without first having obtained the permission and approval of the proper commission."

The Public Service Commissions Law took effect July 1, 1907.

The Long Acre Company was incorporated April 23, 1903, pursuant to the provisions of article VI of the Transportation Corporations Law. Its objects were to manufacture and distribute electricity for light, heat, power or other purposes throughout the boroughs of Manhattan and The Bronx of the city of New York. By the statute and incorporating certificate it became empowered to lay, erect and construct suitable wires, poles and conduits on and under the streets and public places, with the consent of the municipal authorities and in such manner and under such reasonable regulations as they might prescribe.

In February, 1908, the respondent commenced this proceeding. The public service commission, by its order of June 26, 1908, refused to authorize the issuance of the securities upon a ground, among others, that no authority to begin construction had been obtained from the commission or its predecessor, the commission of gas and electricity. The Appellate Division, upon a review under a writ of certiorari, reversed the order and ordered that the application be referred back to the commission for consideration and action within the limits of its author-

ity.  (*People ex rel. Long Acre Electric L. & P. Co.* v. *Public Service Commission*, 137 App. Div. 810.)

In December, 1910, the commission, by its order, fixed the time and place for proceeding under the order of the Appellate Division and caused the order to be served upon the appellant.  The respondent at the outset urged upon the commissioner, who was hearing the application under section 11 of the Public Service Commissions Law, its assertion that the appellant had not the right to intervene in or be a party to and had no standing in the proceeding; that the only question remaining for the commission to decide was the amount of stock and bonds to be authorized and the purposes to which their proceeds should be applied.  The appellant, in opposition, asserted that the hearing and the determination involved the right of the respondent to construct a plant and operate, and the questions: whether the franchise under which the respondent claimed the right to operate had been actually exercised prior to July 1, 1907; whether the respondent had the right to begin construction without first having obtained the permission and approval of the commission, and asserted that it as the operating company had the right to intervene and appear as a party to the proceeding and produce evidence in its behalf.  The commissioner, without making a ruling, permitted the appellant to introduce the evidence received upon the prior hearing and to call " on behalf of the New York Edison Company " two witnesses.  At the close of their examinations the counsel for respondent formulated their position in the motions " that the Edison Company be not allowed to appear or give evidence in this proceeding except as to the securities to be allowed and the application of the proceeds," and that the testimony of the two witnesses be stricken from the record as improper and as relating to irrelevant matters.  The motions were denied, with exceptions to the respondent, and the ruling made that the commission " will hear such testimony as

may be presented, that is germane upon the question whether the franchise has been or has not been exercised." Testimony in behalf of the appellant was then given by a score of witnesses. The respondent called witnesses in rebuttal and the issues and proof were submitted to the commission as a body upon oral and written arguments. Their order authorized the issuance of stock and bonds. Under a writ of certiorari granted the appellant the order was affirmed by the Appellate Division and the writ dismissed (*People ex rel. New York Edison Co. v. Public Service Commission*, 151 App. Div. 832) and this appeal is from the order of affirmance and dismissal.

The petition by which the respondent instituted the proceeding alleged as uses to which the securities to be issued were to be put, the acquisition of property upon which to construct power houses and substations, their construction and the purchasing and laying of underground cables and ducts.

The legislature did not intend or enact that a corporation subject to the provisions of section 69 or section 55 (of identical effect in relation to railroads, street railroads and common carriers) of the Public Service Commissions Law should be given authority by the commissions to issue stock and bonds for the purposes prescribed in those sections until its right to effect those purposes was certain and complete. That law was enacted in response to a pronounced and insistent public opinion and was a radical and important modification of the relations and policy of the people toward the corporations which are its subjects. Its paramount purpose was to protect and enforce the rights of the public. It made the commissions the guardians of the public by enabling them to prevent the issue of stock and bonds for other than statutory purposes or in appreciable and unfair excess of the value of the assets securing them, and to prevent also unneeded or extortionate competition, or indifferent and

94   People ex rel. N. Y. Edison Co. v. Willcox.

[207 N. Y.]          Opinion, per Collin, J.          [Dec.,

unaccommodating methods of operation or oppressive or discriminating charges or rates. It provided for a regulation and control which were intended to prevent, on the one hand, the evils of an unrestricted right of competition and, on the other hand, the abuses of monoply. (*People ex rel. D. & H. Co.* v. *Stevens*, 197 N. Y. 1.) The purpose and intent of the law forbids the commissions to authorize the issue of stock and bonds under sections 69 or 55 when prescribed requirements and conditions precedent to the right of the applicant to construct and operate a plant and system or a railroad have not been fulfilled or complied with· and when, perhaps, the property to be acquired or constructed may never be acquired or constructed and the bonds or stock, the issue of which is applied for, have no substantial security to rest upon. A contrary conclusion would make the authorization and avouchment of the commissions a bait and a trap for ensnaring the investing public.

The language of the sections 69 and 55 establishes the conclusion that the commissions are not empowered to authorize the issue of securities upon the application of a corporation which has not received the permission and approval provided in sections 68 or 53 or is not validly superior to the provisions of those sections. Those sections cannot be evaded by obtaining an order under sections 69 or 55 and the permission to construct implied through it. The issue of the stock and bonds is to be authorized " when necessary for the acquisition of property, the construction, completion, extension or improvement of its plant or distributing system, or for the improvement or maintenance of its service   *   *   * provided and not otherwise that there shall have been secured from the proper commission an order authorizing such issue, and the amount thereof, and stating that, in the opinion of the commission, the use of the capital to be secured by the issue of such stock, bonds, notes or other evidence of indebtedness is reasonably required for the said

purposes of the corporation." The commission cannot, under this language, order the issue of the securities for the purposes mentioned, unless it is satisfied that the applicant has the present and absolute right to accomplish the uses for which the securities are authorized. Problematical uses or purposes do not necessitate or require funds or capital for their execution. The commission may, perhaps, be thus satisfied from its own records, of which, of course, it may take judicial notice. Otherwise it must require allegation and proof. For the purpose of enabling it to determine whether or not it shall issue an authorizing order, it is empowered to hold hearings and examine witnesses. In the present case the petition alleged that the respondent "has the right to place wires for electric light, heat and power in the boroughs of Manhattan and The Bronx as appears by the franchise, a copy of which accompanies this petition." Inasmuch as it had not made an application under section 68 and the records of the commission did not evidence the existence of the alleged right, it was bound to establish it by proof.

The appellant was and for many years had been furnishing electricity for light, heat and power in the boroughs of Manhattan and The Bronx. It was directly and seriously interested in this proceeding which thus involved the consideration and determination of the present right of the respondent to place wires for those uses in those boroughs or acquire property or construct a plant to be used in competition with it. The commission might legally and justly permit it to become a party to the proceeding and the determination adverse to it after its intervention was reviewable, under certiorari, upon its application as the party aggrieved thereby. (*People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Public Service Commission*, 195 N. Y. 157; *People ex rel. Steward* v. *Board of Railroad Commissioners*, 160 N. Y. 202.) The conditions justified the ruling that the appellant should

intervene in and become a party to the proceeding. A
contrary ruling would have been erroneous. The relation
of the appellant to the subject matter and the object
of the proceeding and the situation between the par-
ties, as presented to us, is the same as when the
appellant was allowed to intervene. In respect of any
matter within the scope of the intervention, it became an
actor, with liberty to present its contention and obtain
an adjudication, and a consequent right to have what-
ever was done reviewed by the appellate courts. (*Matter
of Attorney-General* v. *The No. Am. Life Ins. Co., Pier-
son, Receiver, etc.*, 77 N. Y. 297; *Ex parte Jordan*, 94
U. S. 248; *In re Michigan Cent. R. Co.*, 124 Fed. Rep.
727.) The following language of Judge Gray in *People
ex rel. N. Y. C. & H. R. R. R. Co.* v. *Public Service
Commission* (195 N. Y. 157, 166) is pertinent to the pres-
ent question: "It is also insisted by the appellant that the
relator was not a party aggrieved by the action of the
board of railroad commissioners. That was a question
for the board and the Appellate Division to consider. It
turned upon the facts relating to the relator's situation,
as affected by the proposed railroad construction. The
relator showed that it would be affected, inasmuch as it
owned other roads more or less paralleling the proposed
road and serving the same territory. It appeared at the
hearings and was allowed to take part in the proceedings
by the tribunal, as having an interest in the controversy.
The certificate of public convenience and necessity is to be
granted upon considerations, not alone, bearing upon the
convenience of the public, but affecting the other trans-
portation companies, which are already serving the
territory. They have the right to be considered and to
be protected, where there is no necessity for a wider
public service, against the designs of persons more inter-
ested in forcing terms from them, than in subserving the
public convenience. Certainly the rights of shareholders
in the existing roads demand fair consideration." The

respondent does not claim that the appellant may in another tribunal or in another action or proceeding attempt to establish its position that the respondent is not authorized to construct a plant or exercise the franchise. The appeal should not be dismissed.

The respondent has not applied under section 68 for the permission and approval of the commission, that it begin the construction of its electrical plant and system. It asserts that its right to construct is superior to and independent of the restrictions imposed by the section. It is manifest and admitted that the language of the section as hereinbefore quoted is equivocal and may be given either of two interpretations. The one would be fully expressed as follows: "No gas corporation or electrical corporation * * * shall begin construction without first having obtained the permission and approval of the proper commission. No such corporation shall exercise any right or privilege under any franchise hereafter granted, or under any franchise heretofore granted, but not heretofore actually exercised, without first having obtained the permission and approval of the proper commission." The other would be fully expressed as follows: "No gas corporation or electrical corporation * * * shall begin construction under any franchise hereafter granted, or under any franchise heretofore granted, but not heretofore actually exercised, without first having obtained the permission and approval of the proper commission. No such corporation shall exercise any right or privilege under any franchise hereafter granted, or under any franchise heretofore granted, but not heretofore actually exercised, without first having obtained the permission and approval of the proper commission." The commission in the first decision adopted the construction that the respondent could not begin the construction of its plant without first having obtained its permission and approval. The Appellate Division in reversal held that it could begin the construction because the franchise did

7

not fall within the class of franchises "not heretofore actually exercised," thus holding in effect that any gas or electrical corporation might, under section 68 as it was at the commencement of this proceeding, begin any and all construction of its plant or system, which did not come within the franchise, without applying for and receiving the permission and approval of a commission.

The consent or franchise through which the respondent asserts its right to construct is evidenced by a resolution of the board of aldermen of the city of New York of May 31, 1887, as follows: "Resolved, that permission and authority are hereby given and granted unto * * * the American Electric Manufacturing Company * * * to locate and erect poles and hang wires and fixtures thereon, and to place, construct and use wires, conduits and conductors for electrical purposes, in the City of New York, in, over and under the streets, avenues, wharves, piers and parks therein, or adjacent thereto; according to such plans as may be directed, approved or allowed by and subject to the powers of the Electrical Subway Commissioners, and to the provisions of chapter 499 of the Laws of 1885, and under the supervision of the Commissioner of Public Works and of the Department of Public Parks, within their respective territorial jurisdiction, and subject also to all existing ordinances applicable thereto, and to all reasonable regulations of the privilege hereby conferred, which the Common Council may hereafter impose by ordinance or otherwise."

In March, 1906, the respondent became, through mesne assignments, the assignee of such permission and authority. (*Matter of Long Acre Electric L. & P. Co.*, 188 N. Y. 361.)

Certain facts and established principles guide irresistibly to the conclusion that the respondent shall not begin the construction of an electric plant without first having obtained the permission and approval of the commission. It is the settled policy of the state arising through an

extended and instructive experience to withdraw the unrestricted right of competition between corporations occupying through special consents or franchises the public streets and places and supplying the public with their products or utilities which are well nigh necessities. (*People ex rel. New York Electric Lines Co.* v. *Ellison,* 188 N. Y. 523; *Matter of New York Electric Lines Co.,* 201 N. Y. 321; *Willcox* v. *Consolidated Gas Co.,* 212 U. S. 19.)   This policy instigated and is embodied in the Public Service Commissions Law, which was adopted in the interests and for the good of the people and should receive from the courts an activity and effect in aid of that policy within the fair and reasonable meaning of its provisions.   The legislature will not be deemed to have departed in that law from that policy unless there is clear and certain language to that effect. (*Matter of New York, W. & B. R. Co.,* 193 N. Y. 72.)

The construction given section 68 by the Appellate Division, as contrasted with that adopted by the commission in its first order, thwarts the policy in two respects: thereunder any gas or electrical corporation might begin the construction of that part of its plant which did not come under the consent without applying to the commission for its permission; and might begin, without such permission, the construction of its entire plant and system, provided it held a franchise granted and actually exercised prior to July 1, 1907.   The respondent has stated, and we perceive, no ground for a legislative partiality towards the corporations holding consents existing at the adoption of the Public Service Commissions Law, or for the requirement that the permission and approval of the commission must be had for the construction under the franchise only.   A scrutiny of other sections of the law creates the conviction that it intends to bring under its restrictions and regulation, in so far as is lawful, the franchises, powers and rights of the corporations existing at its enactment and to which it relates, and under the

control of the commissions all construction of their plants. Section 53 in article III of the law relating to common carriers, railroads and street railroads provides: "Without first having obtained the permission and approval of the proper commission no railroad corporation, street railroad corporation or common carrier shall begin the construction of a railroad or street railroad, or any extension thereof, for which prior to the time when this act becomes a law a certificate of public convenience and necessity shall not have been granted by the board of railroad commissioners or where prior to said time said corporation or common carrier shall not have become entitled by virtue of its compliance with the provisions of the railroad law to begin such construction; nor, except as above provided in this section, shall any such corporation or common carrier exercise any franchise or right under any provision of the railroad law, or of any other law, not heretofore lawfully exercised, without first having obtained the permission and approval of the proper commission. * * *," upon proof of public convenience or necessity. The policy which inspired the effects of this section was as applicable to gas and electrical corporations as to the corporations it affects. The law places the former under the supervision and regulation of the commission quite as broadly as the latter. Whatever inference may be drawn from the differing phraseology of the sections 53 and 68 is overborne by the purpose of the law; moreover, it may well be that the conditions which were created between the corporations to which article III relates and the board of railroad commissioners, and by the many statutory provisions relating to those corporations may have made inexpedient in section 53 the conciseness of the language of section 68. Our view is further strengthened by the fact that the amendment of section 68 taking effect June 14, 1910, provided: "No gas corporation or electrical corporation shall begin construction of a gas plant or electric plant without first having obtained the

permission and approval of the commission of each district within which any part of the work or construction is to be performed. No such corporation shall exercise any right or privilege under any franchise hereafter granted, or under any franchise heretofore granted but not heretofore actually exercised, or the exercise of which shall have been suspended for more than one year, without first having obtained the permission and approval of the proper commission, * * * " (Cons. Laws, ch. 48, section 68), upon proof of public convenience or necessity. The amended section may correctly be deemed, through the nature of the Public Service Commissions Law, a statement in clearer terms of the intention of the original section. (*People ex rel. Binghamton L., H. & P. Co.* v. *Stevens*, 203 N. Y. 7.) A further indication of the legislative intention is in section 99 of article V relating to telegraph and telephone lines and companies: "No telegraph corporation or telephone corporation hereafter formed shall begin construction of its telegraph line or telephone line without first having obtained the permission and approval of the commission and its certificate of public convenience and necessity, after a hearing had upon such notice as the commission may prescribe." (Cons. Laws, ch. 48, section 99.)

The consent of the municipal authorities, given under the provisions of the statute, was for the construction of the part of the plant on or under the streets of the two boroughs to be used in conducting and distributing electricity. (Transportation Corporations Law, § 61.) The actual exercise of the consent or franchise necessarily involved the beginning of the construction of that part of the plant. The effect of the decision of the Appellate Division, therefore, is that the corporation shall not begin construction under the consent without the permission and approval of the commission, unless it has through an actual exercise of the consent begun construction under the consent. This inharmonious conclusion does not arise

**102** People ex rel. N. Y. Edison Co. *v.* Willcox.

[207 N. Y.]     Dissenting opinion, per Cullen, Ch. J.          [Dec.,

if it is held that the words " under any franchise hereafter granted, or under any franchise heretofore granted but not heretofore actually exercised " apply only to the words " or exercise any right or privilege." Another result of the Appellate Division decision is that the construction of the part of the plant not within the franchise, including the power houses, sub-stations, machinery and appliances could be had with any application to the commission, and as a consequence the corporation could apply for and receive authority to issue stock and bonds under section 69 although it might not have or thereafter obtain the right to construct the part of its plant essential for conducting and distributing the electricity. This is contrary to the intention of the law, as we have stated in this opinion. The commission had not the power to authorize the issue of the stock and bonds for the reason that the respondent had not its permission and approval to begin the construction of its plant.

We do not consider the question as to whether or not the franchise held by the respondent was actually exercised prior to the taking effect of the Public Service Commissions Law, for the reason that the commission did not make or base the final order upon a finding of fact in regard to it.

The orders of the Appellate Division and the order of the commission of July 28, 1911, should be reversed, with costs in the Appellate Division and in this court.

Cullen, Ch. J. (dissenting.) At the threshold of this case the question arises whether, in the eyes of the law, the appellant is the party aggrieved by the determination it seeks to review on appeal, for otherwise, no matter how erroneous that determination may have been, the appellant has no standing in court to prosecute the appeal, and it must be dismissed. In 1908 the respondent, claiming to be the owner of a valid franchise to furnish electric light and power in the city of New York, applied to the public serv-

ice commission for authority to issue stock and bonds as required by section 12 of the Gas Commission Act (Laws of 1905, chap. 737). The application was denied by the commissioners on the ground, among others, that the existing companies were properly serving public interests, and that it would not be to the advantage of the community to have a new company. On a writ of certiorari obtained by the petitioner this determination was reversed by the Appellate Division and the matter remitted to the commissioners for a further hearing (137 App. Div. 810). At the second hearing, at which the present appellant appeared in opposition to the application, the commission made an order granting leave to issue stock and bonds. The order of the commission grants merely this authority and nothing more. The present appellant thereupon sued out a writ of certiorari, and the determination of the commission was confirmed by the Appellate Division (151 App. Div. 832), and from the order of the Appellate Division this appeal is taken.

The restriction upon the authority of a gas and electric light company to issue stock and bonds without the approval of the proper public service commission was enacted to protect the public who may invest in such securities, and also to some extent to protect the public so far as it might become a patron of the company; for every one knows that when the question of rates or price arises the appeal is always strenuously made that the holders of the securities who have invested in the same should be allowed an adequate return on their investment, though the securities may not represent a real investment of capital or outlay in the construction or maintenance of the company's plant.

In *People ex rel. Delaware & Hudson Company* v. *Stevens* (197 N. Y. 1, 9), Judge HAIGHT, writing for this court, said: "We understand that the paramount purpose of the enactment of the Public Service Commissions Law was the protection and enforcement of the rights of

the public.  *  *  *  For a generation or more the public has been frequently imposed upon by the issues of stocks and bonds of public service corporations for improper purposes, without actual consideration therefor, by company officers seeking to enrich themselves at the expense of innocent and confiding investors.   One of the legislative purposes in the enactment of this statute was to correct this evil by enabling the commission to prevent the issue of such stock and bonds, if upon an investigation of the facts it is found that they were not for the purposes of the corporation enumerated by the statute and reasonably required therefor."

That this view, that the statutory provision was intended to protect the investing public, is correct is made clear by the terms of the provision itself.  The company does not require the consent of the commission to enable it to borrow money or incur debt, unless it issues therefor securities of some kind, stock, bonds or evidences of indebtedness, and in the case of evidences of indebtedness, only when they are payable more than twelve months after date.   Therefore, if the Long Acre Company was to borrow the money on open account or on short term notes, no consent would be necessary.   It is said by the learned counsel for the respondent: "To allow securities to be issued and then not to permit the proceeds to be used in the business of the company would be an inane and futile act; and it would also be practicing a gross deception on investors who might have purchased such securities relying upon the order of the Commission."  Assuming for the argument the correctness of this position, the question remains, how was the appellant made the champion of the rights of the investing public so as to give it a standing in court to appeal from what it deems an erroneous decree ?   It does not propose to invest in the securities of the Long Acre Company or to become a patron of its services.   If the appellant can prosecute an appeal because the order of the Appellate Division

may injuriously affect the public, then any or all of the nine million citizens of this state, or, at least, all the adults, have the same right. · The real object of the appellant is to cripple a proposed competitor by rendering it difficult for the latter to obtain funds to prosecute its enterprise. In this respect it is interested in the result of this proceeding, but it is not such an interest as the law recognizes. It often occurs that the question which determines a litigation in court is of vital importance to other parties who have controversies depending upon the determination of the same question. At such times it is the common practice of the court to allow such third parties to file briefs on the argument of the case so that their rights may not practically, though not in the eyes of the law, be decided without their having an opportunity to be heard. But such persons cannot become parties to the suit. Though they should be heard at the Appellate Division it would give none of them any right to appeal from an adverse decision. On the argument it was conceded that no decision that we make in this case would be conclusive on the appellant in any litigation that may arise between the two companies, and, apart from any concession of counsel, the proposition is clear. We have already decided on an application of the Long Acre Company to compel the subway company to assign space in the subway for the Long Acre Company's wires, that that company had a valid franchise and the right to furnish electric light. (*Matter of Long Acre Elec. L. & P. Co.*, 188 N. Y. 361.) Yet, even the counsel for the respondent does not claim that that decision is conclusive as to the rights of the company when challenged in this proceeding, while the counsel for the appellant claims that the true facts were not made to appear in the mandamus litigation. I think, therefore, that we should not strain to assume jurisdiction of an appeal and render a decision which will have little practical effect when rendered. If we should affirm the order

106 People ex rel. N. Y. Edison Co. *v.* Willcox.

[207 N. Y.]    Dissenting opinion, per Cullen, Ch. J.    [Dec.,

appealed from it would not preclude the people of the state or the officials of the city of New York, or, as already said, the appellant, from questioning the existence or the validity of the Long Acre Company's franchise; while if we should reverse the order it would not preclude the Long Acre Company from borrowing money so long as it did not issue bonds or securities payable more than a year after date in acknowledgment of it.

At the time this proceeding was instituted section 68 of the Public Service Act required any gas or electrical corporation before beginning construction or exercising any right or privilege under any franchise thereafter granted, or theretofore granted but not actually exercised, to obtain the approval of the public service commission. In 1910 (Chap. 480) this statute was amended so as to provide: "The Commission within whose district such construction is to be made, or within whose district such right, privilege or franchise is to be exercised, shall have power to grant the permission and approval herein specified whenever it shall after due hearing determine that such construction or such exercise of the right, privilege or franchise is necessary or convenient for the public service." (Cons. Laws, ch. 48.) To an application to exercise the franchise made under this section as amended, doubtless the appellant would be a proper party, if it saw fit to intervene. By the amendment the status of gas and electric companies is made similar to that of railroad companies, as to which we have held that an existing company has a standing to oppose the granting of a franchise to a competing company. (*People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Pub. Service Com.*, 195 N. Y. 157.) It is now suggested that the order made by the commission, though confined in terms solely to a grant of authority to issue stocks and bonds, necessarily imports the grant of a permission under section 68 as amended in 1910. The contention seems to me wholly groundless. The petitioner did not ask for any consent

to commence work, but claimed to have a valid franchise beyond the power of the commission to abrogate. The Appellate Division held that the amendment of 1910 had no application to the case because the proceeding had been commenced before its enactment. It seems that the franchise of a gas or electric light company, when duly granted, is property, the same as the franchise of a railroad company (*People ex rel. Woodhaven Gas Light Company* v. *Deehan,* 153 N. Y. 528; *Matter of Long Acre Electric Light & Power Co., supra*), and the franchise of a railroad company cannot be repealed or abrogated by the legislature (*People* v. *O'Brien,* 111 N. Y. 1), though, doubtless, it can be forfeited for non-user in a judicial proceeding. (*People* v. *Broadway R. R. Co.,* 126 N. Y. 29.) In *People ex rel. Third Avenue Railway Company* v. *Public Service Comm.* (203 N. Y. 299) we held that in the case of a company succeeding to the title of a valid railway franchise no consent of the public service commission could be made a prerequisite to the right of the company to exercise the franchise.

It is urged, but not by counsel for the appellant, that the decision of the public service commission would conclude the appellant in any litigation that might hereafter arise between the parties on the question of the possession by the respondent of a valid franchise to furnish electric light and power. As already said, it was admitted by the appellant on the argument that the decision would not have that effect. The reason for that position to me seems plain. A franchise to furnish electric light and power and lay conduits for that purpose in the city streets is property, the same as other property, though it is doubtless liable to forfeiture by judicial decree for non-user or abandonment. (*People* v. *Atlantic Ave. R. R. Co.,* 125 N. Y. 513; *People* v. *Broadway R. R. Co.,* 126 id. 29.) As between it and the appellant the respondent has the right to have the question of its

original possession of such a franchise or its subsequent forfeiture or loss determined in the ordinary courts of justice in this state in the same manner as litigations relative to other property rights are disposed of. The legislature did not create — if it could, which I deny — of the public service commission a judicial tribunal to determine that question between the parties to this appeal, for it is settled law that to make a judicial decision binding the statute must provide for a notice to the parties affected and a hearing. Otherwise it is unconstitutional. (*Matter of Empire City Bank,* 18 N. Y. 199; *Stuart* v. *Palmer,* 74 N. Y. 183; *Remsen* v. *Wheeler,* 105 N. Y. 573.) There is no provision in the statute requiring the public service commission to give notice to the appellant or any one else of the application of the respondent for leave to issue securities. Therefore, the decision of the commission could not conclude the appellant on the question of the respondent's franchise in any litigation where it might be entitled to raise the question. The voluntary appearance of the appellant before the commission would not give any greater validity to the determination of the commission, because consent cannot confer jurisdiction.

It may be suggested that this objection would be fatal to the rights of competitors to appear before the commission in proceedings, under section 68 of the statute, as amended in 1910, or under section 59 of the Railroad Law (Laws of 1890, chap. 565, as amended), or to appeal from its determination under those statutes. But those proceedings differ wholly in principle from the one before us. They require a determination by the commission of public convenience and necessity before the acquisition of a valid operative franchise. Such a determination decides no property right within constitutional protection. On the one hand, the legislature might allow any railroad company organized in compliance with the statute to build its railroad between the points designated in its articles of

association, as was the law of this state until some thirty years ago. On the other hand, the legislature might require of the corporation approval of its enterprise from just such authority or tribunal as it saw fit, as the grant of a franchise is a mere matter of grace on the part of the state. There is nothing inconsistent in the fact that while the statute does not require notice to be given to parties who might be affected by the determination of the commission, it accords them the right to intervene and protect their interests. This is the doctrine of *People ex rel. Steward* v. *Board of Railroad Commissioners* (160 N. Y. 202).

Therefore, we are brought back to the original question whether the appellant is aggrieved in law by the authority accorded the respondent to issue stock and bonds. Three cases are cited as authority for the proposition that because the appellant was allowed to intervene below it is entitled to prosecute the appeal. They are *Matter of Attorney-General* v. *No. Am. L. Ins. Co.* (77 N. Y. 297); *Ex parte Jordan* (94 U. S. 248), and *In re Michigan Cent. R. Co.* (124 Fed. Rep. 727). In these cases, however, the interest of the intervenors in the litigation was direct and substantial. They asserted the right to be awarded to them funds or property which the decrees appealed from awarded to others. They would have been necessary parties to the litigation in the first instance except for the fact that being mortgage bondholders, the trustees in law represented them. But the fact that a party is allowed to interevene does not allow him to prosecute an appeal, unless he is bound or affected by the order or judgment. The fact that it may remotely or contingently affect his interests does not give him the right to appeal. It must have a binding force against his rights, his person or his property. (*Ross* v. *Wigg*, 100 N. Y. 243. See, also, *Honegger* v. *Wettstein*, 94 id. 252.)

Indeed the certiorari should not have been allowed at

the instance of the appellant, for section 2122 of the Code of Civil Procedure forbids its issue to review " a determination which does not finally determine the rights of the parties with respect to the matter to be reviewed." Assuming for the argument that the determination of the public service commission imports as between the commission and the respondent that the latter has a valid franchise, that is of no importance under the section quoted unless that decision finally determines the question as between the appellant and the respondent.

The majority of my brethren holding that the appellant is entitled to prosecute its appeal, I am brought to the consideration of the merits of the case and dissent from the decision about to be made as contravening both the settled substantive law of this state and also the settled method of procedure.   The decision of my brethren proceeds on the proposition that under the Public Service Law all gas and electric companies must obtain the consent of the commission, under section 68 of the act, to exercise their franchises before they can apply for leave to issue stock and bonds, and this whether the company had a valid franchise at the time of the enactment of the statute or not.   In the opinion of the majority of the court it is stated: "We perceive no ground for a legislative partiality towards the corporations holding consents existing at the adoption of the Public Service Commissions Law, or for the requirement that the permission and approval of the commission must be had for the construction under the franchise only.   A scrutiny of other sections of the law creates the conviction that it intends to bring under its restrictions and regulation, in so far as is lawful, the franchises, powers and rights of the corporations existing at its enactment and to which it relates, and under the control of the commissions all construction of their plants."   I think there is the best of reasons for so-called legislative partiality to corporations existing at the time of the enactment of the statute, that is to say, it

was beyond the power of the legislature to require any corporation having a valid franchise for supplying gas or electricity in a municipality to obtain the consent of the public service commission as a condition precedent to the exercise of its franchise, because, under the decisions already cited in this opinion, that franchise was property and as immune from legislative attack as any other property. We have decided exactly that principle in *People ex rel. Third Ave. R. Co.* v. *Public Service Commission (supra).* Nor is the principle affected by the fact that the franchise might not have been actually exercised at the time. A franchise, though unexercised, is property within the constitutional safeguards. (*Suburban Rapid Transit Co.* v. *Mayor, etc., of N. Y.,* 128 N. Y. 510.) If taken, compensation must be made for it. (*Coney Island, F. H. & B. R. R. Co.* v. *Kennedy,* 15 App. Div. 588.) As already said, the franchise may be forfeited for non-user, but unless in the statute authorizing the acquisition of the franchise it is provided that a certain lapse of time shall operate as a forfeiture *ipso facto,* a forfeiture can be decreed only by judicial proceedings in a direct action by the state. The franchise cannot be questioned by other parties. (*Matter of Brooklyn Elevated R. R. Co.,* 125 N. Y. 434.)

The only question on which the respondent's right to an issue of stock and bonds depends — the possession of a valid franchise — is not passed upon by the court. It is assumed that the respondent has exercised its franchise so far as the erection of poles, wires, fixtures and conduits for electrical purposes in the streets, avenues and public places of the city are concerned. A distinction is sought to be drawn between this franchise and a franchise to build an electric plant for the generation of electric power and current. This distinction seems to be wholly without foundation. A franchise to furnish gas in a municipality and to use the streets for that purpose necessarily includes the franchise to manufacture gas to be

112 People ex rel. N. Y. Edison Co. *v.* Willcox.

[207 N. Y.]    Dissenting opinion, per Cullen, Ch. J.    [Dec.,

delivered; a franchise to furnish electric power through the streets of a city necessarily includes the right to construct a plant for the generation and development of electricity; a franchise to maintain a street railroad includes the right to build a car barn for the storage of cars and a horse stable for the care of horses, if the right is to operate by horses, or an electric plant, if the road is to be operated by electricity. All these are inseparable incidents of the franchises and cannot be severed from them. Indeed, it requires no franchise for a company to build on its own property an electric plant or a horse stable, or a car barn, unless these uses constitute a nuisance against the neighbors, in which case the grant of a franchise would be no protection. (*Cogswell* v. *N. Y., N. H. & H. R. R. Co.,* 103 N. Y. 10; *Bohan* v. *Port Jervis Gas L. Co.,* 122 id. 18; *Bly* v. *Edison El. Illum. Co.,* 172 id. 1.)

On the matter of practice it is said the court does not consider the question whether the franchise held by the respondent was actually exercised by it prior to the enactment of the Public Service Commissions Law, because the commission did not make or base the final order upon a finding of fact in regard to it. I know of no rule requiring the public service commission to make findings of fact, and, indeed, in the great mass of special proceedings — the exceptions being very few — no findings of fact are made by the tribunal of first instance, whether judicial or quasi judicial. In such cases all that is required in this court to sustain the orders appealed from is that the record should present some evidence to justify the order. The commission made no findings of fact on which the present order was based. But this is equally true of many, if not all of the orders of the public service commissions. If a new practice is to be established and the order reversed for a defect of that character, the case should be remitted to the commission for a further determination.

There are too many embarrassments attending the dis-

position of this case on the merits for us to enter upon its decision needlessly. The right of the Long Acre Company to any franchise whatever can be properly determined in an action brought by the attorney-general on behalf of the People and there it should be determined.

HAIGHT, HISCOCK and CHASE, JJ., concur with COLLIN, J.; VANN and WILLARD BARTLETT, JJ., concur with CULLEN, Ch. J.

Orders reversed, etc.