CONTINENTAL SECURITIES CO. v. INTERBOROUGH RAPID TRANSIT CO. et al. (two cases).

(Circuit Court of Appeals, Second Circuit. February 9, 1915.)

Nos. 66, 67.

1. MONOPOLIES ⬤⇒16—STREET RAILROADS—CONSOLIDATION—STATUTORY PROVISIONS.

Stock Corporation Law N. Y. § 14 (Laws 1890, c. 564, § 7, as amended by Laws 1892, c. 688, § 7, and Laws 1897, c. 384, § 1), providing that no domestic stock corporation and no foreign corporation doing business in the state shall combine with any other corporation or person for the creation of a monopoly or the unlawful restraint of trade, or for the prevention of competition in any necessary of life, does not apply to corporations subject to the supervision of the Public Service Commission, and did not render unlawful a corporation organized to purchase a controlling interest in corporations controlling the street surface railway, elevated railway, and subway systems of a city, for the purpose of combining the operation of such companies, even though such combination created a monopoly, unlawfully restrained trade, or prevented competition in a necessary of life, in view of Railroad Law (Laws 1890, c. 565, as amended by Laws 1892, c. 676) § 80, providing that no railroad, corporation or corporations owning or operating railroads whose roads run on parallel or competing lines, except street surface railroad corporations, shall merge or consolidate, or enter into any contract for the use of their respective roads, or lease them one to the other, unless the Board of Railroad Commissioners (now the Public Service Commission) shall consent thereto, as this section authorizes railroads in cities, although not street surface railways, to control parallel and competing lines with the consent of the Commission.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 12; Dec. Dig. ⬤⇒16.]

---

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2.** MONOPOLIES ☞20—PURCHASING STOCK IN OTHER CORPORATIONS.

Stock Corporation Law N. Y. § 52 (Laws 1890, c. 564, § 40, as amended by Laws 1892, c. 601, § 1), authorizing stock corporations to purchase, acquire, and hold the stocks, bonds, and other evidences of indebtedness of other corporations, if authorized by their certificate of incorporation, or if the corporation whose stock is so purchased, etc., is engaged in a similar business, etc., does not authorize purchases of stock which would have the effect of violating section 14, providing that corporations shall not combine for the creation of a monopoly or the unlawful restraint of trade, or for the prevention of competition in any necessary of life.

[Ed. Note.—For other cases, see Monopolies, Dec. Dig. ☞20.]

**3.** MONOPOLIES ☞24—MERGER OR CONSOLIDATION—ACTIONS—PARTIES.

Where the I. Co., controlling the elevated and subway systems of a city, after combining with companies controlling a large part of the street surface systems of the city, by means of a holding company organized to acquire a controlling interest in each company, paid higher dividends than before such combination and increased its surplus in a large amount, a person who bought stock in the I. Co., with knowledge of the intention to combine such companies, and who had not suffered any special damages or been injured in any way differently from the general public, could not assert the rights of the public in a suit to have the holding company declared an unlawful combination and monopoly.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 17; Dec. Dig. ☞24.]

Appeal from the District Court of the United States for the Southern District of New York.

For opinion below, see 207 Fed. 467.

J. Aspinwall Hodge, of New York City, for appellant.

Richard Reid Rogers, of New York City, for corporate appellees.

Nicoll, Anable, Lindsay & Fuller, of New York City (Delancey Nicoll, Richard Reid Rogers, and Albert J. Kenyon, all of New York City, of counsel), for individual appellees.

Winthrop & Stimson, of New York City (Henry L. Stimson and George Roberts, both of New York City, of counsel), for appellee Guaranty Trust Co.

Before COXE, WARD, and ROGERS, Circuit Judges.

WARD, Circuit Judge. These are appeals from decrees of Judge Hough dismissing the bill of complaint in each suit. The precise question involved having been several times considered by the federal courts of this district, it will not be necessary to restate the facts at length.

Suit No. 1: The bill alleges that August Belmont, representing a controlling interest in the Interborough Rapid Transit Company, and Thomas F. Ryan, representing a controlling interest in the Metropolitan Street Railway Company, agreed upon a plan to combine the operation of both companies in one hand. To that end early in 1906 they caused the Interborough Metropolitan Company to be organized under the Business Corporation Law of the state of New York, and in exchange for its securities transferred to it 96 per cent. of the capital stock of the Interborough Company, which controls the elevated and subway systems of the city, 88½ per cent. of the capital stock of the Metropolitan Street Railway Company, which controls a large

part of the surface system, and 98 per cent. of the capital stock of the Metropolitan Securities Company, which owns all the capital stock of the New York City Railway Company, the lessee of the Metropolitan Street Railway Company. The Interborough Metropolitan Company pledged, among other things, the Interborough stock it held to secure the payment of its bonds issued under a mortgage to the Windsor Trust Company, as trustee. The complainant is a corporation of the state of New Jersey owning 300 shares of the capital stock of the Interborough Company, of which the bill alleges that it was the owner at or prior to the time the matters and things complained of took place.

The relief prayed is that the plan of combination be declared illegal and void, that the Interborough Metropolitan Company be declared an unlawful combination and monopoly, that the mortgage of its stock in the other corporations to the Windsor Trust Company to secure payment of its bonds be declared illegal, that the stock of the Interborough Company so pledged be returned to the holders of the Interborough Metropolitan bonds in exchange for the securities they received, and that the Interborough Metropolitan Company be enjoined from voting upon the Interborough stock.

A supplemental bill was filed, which it will not be necessary to consider.

[1, 2] The theory of the bill is that all of the foregoing transactions were in violation of section 14 of the New York Stock Corporation Law (Laws 1890, c. 564, § 7, amended by Laws 1892, c. 688, § 7, and Laws 1897, c. 384, § 1), which reads:

"Sec. 14. Combinations Prohibited. No domestic stock corporation and no foreign corporation doing business in this state shall combine with any other corporation or person for the creation of a monopoly or the unlawful restraint of trade or for the prevention of competition in any necessary of life."

In 1906, previously to the institution of these suits, one Burrows, a stockholder of the Metropolitan Securities Company, filed a similar bill in the District Court of this district, a demurrer to which was overruled by Judge Holt. Burrows v. Interborough Metropolitan Co. (C. C.) 156 Fed. 389. Judge Ray, following Judge Holt's decision, overruled a demurrer to the bill in this case. (C. C.) 165 Fed. 945. Judge Lacombe denied a motion for a preliminary injunction. (D. C.) 203 Fed. 521. And on final hearing Judge Hough dismissed the bill. (D. C.) 207 Fed. 467.

There is also a decision of the Appellate Division of the First Department, which, though not binding upon us, because not a decision of the court of last resort and involving only the right of the state to vacate the charter for violation of section 14 of the New York Stock Corporation Law, supra, still throws much light upon the public policy of the state in reference to combinations of street railroads, surface and otherwise, as declared in its statutes, viz., that the restrictions of section 14 of the Stock Corporation Law do not apply to corporations subject to the supervision of Public Service Commissions. The Interborough Metropolitan Case, 125 App. Div. 804, 110 N. Y. Supp. 186. The review of the statutes made by Mr. Justice

Clarke need not be repeated here. Likewise the case of People ex rel. New York Edison Co. v. Willcox, 151 App. Div. 832, 136 N. Y. Supp. 1031 (reversed on other grounds 207 N. Y. 86, 100 N. E. 705, 45 L. R. A. [N. S.] 629), though not involving street railways, does set forth the policy of the state with reference to corporations subject to Public Service Commissions.

Conceding, without deciding, that the combination complained of was intended to create and did create a monopoly or unlawfully restrained trade or prevented competition in a necessary of life, and that the complainant has a standing as a stockholder to enjoin the acts complained of as being ultra vires, we still think the decree of the court below was right. The Interborough Metropolitan Company had a right to buy the stocks of the corporations named by authority of section 52 of the Stock Corporation Law (Laws 1890, c. 564, § 40, as amended by Laws 1892, c. 688, § 40, and Laws 1902, c. 601, § 1), which reads:

"Sec. 52. Purchase of Stock of Other Corporations. Any stock corporation, domestic or foreign, now existing or hereafter organized, except moneyed corporations, may purchase, acquire, hold and dispose of the stocks, bonds and other evidences of indebtedness of any corporation, domestic or foreign, and issue in exchange therefor its stock, bonds or other obligations if authorized so to do by a provision in the certificate of incorporation of such stock corporation, or in any certificate amendatory thereof or supplementary thereto, filed in pursuance of law, or if the corporation whose stock is so purchased, acquired, held or disposed of, is engaged in a business similar to that of such stock corporation, or engaged in the manufacture, use or sale of the property, or in the construction or operation of works necessary or useful in the business of such stock corporation, or in which or in connection with which the manufactured articles, product or property of such stock corporation are or may be used, or is a corporation with which such stock corporation is or may be authorized to consolidate. When any such corporation shall be a stockholder in any other corporation, as herein provided, its president or other officers shall be eligible to the office of director of such corporation, the same as if they were individually stockholders therein and the corporation holding such stock shall possess and exercise in respect thereof, all the rights, powers and privileges of individual owners or holders of such stock."

This section must be read, if possible, consistently with section 14, and, so read, such purchases could not be lawfully made with the effect of violating that section. Section 80, however of the Railroad Law (chapter 565, Laws 1890, as amended by chapter 676, § 80, Laws 1892), reads:

"Sec. 80. Consolidation and Lease of Parallel Lines Prohibited. No railroad corporation or corporations owning or operating railroads whose roads run on parallel or competing lines, except street surface railroad corporations, shall merge or consolidate, or enter into any contract for the use of their respective roads, or lease the same, the one to the other, unless the board of railroad commissioners of the state or a majority of such board shall consent thereto. (As amended by Laws 1892, c. 676.)"

We think this section authorizes railroads in cities, although not surface street railways, to control parallel and competing lines, provided they have the consent of the Public Service Commission (which takes the place of the Board of Railroad Commissioners—section 86, Public Service Commissions Law [Consol. Laws, c. 48]) to do so.

Regulation by such official authority was no doubt regarded as sufficient to secure the public against unreasonable charges or defective and insufficient service. This is the view taken in the state cases cited above. It is briefly, but thoroughly, stated by Judge Collin in People v. Willcox, supra:

"It is the settled policy of the state, arising through an extended and instructive experience, to withdraw the unrestricted right of competition between corporations occupying through special consents or franchises the public streets and places and supplying the public with their products or utilities which are well nigh necessities. People ex rel. New York Electric Lines Co. v. Ellison, 188 N. Y. 523 [81 N. E. 447]; Matter of New York Electric Lines Co., 201 N. Y. 321 [94 N. E. 1056]; Willcox v. Consolidated Gas Co., 212 U. S. 19 [29 Sup. Ct. 192, 53 L. Ed. 382, 48 L. R. A. (N. S.) 1134, 15 Ann. Cas. 1034]. This policy instigated and is embodied in the Public Service Commissions Law, which was adopted in the interests and for the good of the people, and should receive from the courts an activity and effect in aid of that policy within the fair and reasonable meaning of its provisions. The Legislature will not be deemed to have departed in that law from that policy unless there is clear and certain language to that effect. Matter of New York, W. & B. T. Co., 193 N. Y. 72 [85 N. E. 1014]."

Although this statement was not necessary to the decision, it is still entitled to great consideration as indicating the understanding of the highest court of the state of New York as to the public policy of the state. We think it entirely sound.

It is objected that the Interborough Metropolitan Company, being a stock corporation and not a railroad, is not subject to the supervision of the Public Service Commission, so that the section does not apply to it. But the railroads whose stock it controls are subject to the Commission and are certainly being regulated by it.

[3] Finally, the complainant, to be entitled to relief, must show that it has suffered special damage. Thomas v. Musical Protective Union, 121 N. Y. 45, 24 N. E. 24, 8 L. R. A. 175. It bought the Interborough stock with knowledge of the intention to do the things it complains of, and there is no proof that the stock at the time of suit brought or now is worth less than the price it paid. The record seems to show the contrary, viz., that the Interborough Company's dividends have risen from 8 per cent. to 10 per cent., and its surplus increased from $1,467,409 to $7,340,348. Complainant does not appear to be injured in any way differently from the general public, and therefore should not be allowed to assert the rights of the public.

Suit No. 2 attacks a mortgage made by the Interborough Company to the Morton Trust Company, as trustee, to secure $55,000,000 of its bonds. The consent of stockholders to the making of this mortgage, required by section 4, subd. 10, of the Railroad Law, was given by the Windsor Trust Company, as trustee under the mortgage of the Interborough Metropolitan Company covering the Interborough Company's stock deposited with it. The complainant objects that this consent is invalid, because the Interborough Metropolitan Company is an unlawful monopoly. It admits, however, that this question has become academic, because since suit brought the mortgage in question has been paid off and canceled of record, but prays that the decree dismissing the bill may be modified, so as to state that at

the time of suit brought it had a good cause of action. Under such circumstances it might be equitable to give it costs. Consistently with our conclusion in suit No. 1, we must find that the complainant had not a good cause of action.

The decrees in both causes are affirmed.