# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed May 9, 1927.

---

THE NORTHERN MARYLAND POWER COMPANY
VS.
CONSOLIDATED GAS ELECTRIC LIGHT AND POWER COMPANY.

---

*Piper, Carey & Hall* and *Armstrong, Machen & Allen* for plaintiff.

*Haman, Cook, Chesnut & Markell* for defendant.

STANTON, J.—

For brevity the plaintiffs will be designated the Northern Maryland Company, and the defendant the Consolidated Gas Company. The case arises out of the following facts:

The Consolidated Gas Company acquired the franchise rights of certain electric power companies which were incorporated under the general law of this State. It has developed the use of electric light and power, and supplied the same to Baltimore City, and its environs since 1898. The territory served by it outside of Baltimore City extended to Elkridge, in Howard County, which is a small settlement about nine or ten miles from Baltimore City; and Brooklyn, in Anne Arundel County, which is also a small settlement immediately across the Patapsco River from the Baltimore City shore line. It also supplied a pleasure park to the east of Brooklyn, and about four to six miles from Baltimore City. At a more recent date, and about 1900, it extended service to Reisterstown, which is eighteen miles from Baltimore City; and also some portions of Carroll County, which is about twenty-five or thirty miles. All of these extensions of service into the counties were prior to the year 1910, except possibly Carroll County.

In 1910 the Public Service Commission was created by an Act of the Legislature, and certain powers were conferred on and duties required of it, which are particularly enumerated in the Act.

Sec. 33 provides: "No gas corporation or electrical corporation incorporated under the laws of this or any other State shall begin construction or exercise any right or privilege under any franchise *hereafter granted* or under any franchise *heretofore granted but not heretofore actually exercised*, without first having obtained the permission and approval of the Commission."

In 1925 the Consolidated Gas Company extended its lines to the United States Proving Grounds at Aberdeen, and before doing so sought the approval of the Public Service Commission. The Northern Maryland Company protested the extension, but it was finally allowed, and the service was installed. Aberdeen is about 35 miles from Baltimore City; and within seven or eight miles of Havre de Grace.

The Northern Maryland Company was incorporated under the general law of this State, and it or its predecessors have been furnishing electric light and power to the City of Havre de Grace since about 1899.

The record discloses that negotiations were begun, and had been carried on between the Northern Maryland Company and the Consolidated Gas Company, looking to the purchase of the plant and equipment of the Northern Maryland Company.

About December, 1924, the City Council of Havre de Grace expressed dissatisfaction with the service being furnished by the Northern Maryland Company, and passed certain legislation dealing with the subject. The Northern Maryland Company says it had no notice of any complaints about its service other than one or more by individuals complaining of rates, which were satisfactorily adjusted. Pending the negotiations the City Council of

Havre de Grace passed an ordinance requesting the Consolidated Gas Company to furnish electric light and power service to the city and its inhabitants. The Consolidated Gas Company notified the Northern Maryland Company it proposed to enter the City of Havre de Grace to furnish the service requested. Thereupon the Northern Maryland Company complained to the Public Service Commission, because the Consolidated Gas Company had not applied to the Public Service Commission for permission to extend its lines, nor had it requested any approval of its plans.

The Consolidated Gas Company began the work of constructing its poles and wires. and the Northern Maryland Company filed the bill of complaint in this case, praying an injunction preliminary and permanent until the Public Service Commission could or would act.

On hearing in open Court for a preliminary injunction, it did not appear to the Court that such irreparable injury was imminent as to call for the extraordinary relief by injunction. If the Consolidated Gas Company was invading any of the plaintiff's rights of way, adequate remedy at law was afforded, as well as for any damage done to its equipment, as claimed in the allegations of the bill. And if the Consolidated Gas Company had no right to extend its lines, it would have made an outlay in expense which it alone must bear. The Consolidated Gas Company submitted its plans for extending its lines and service to Jarrettsville and Aberdeen, to the Public Service Commission for approval in 1925. The plaintiffs claim the Consolidated Gas Company must continue to submit its plans and obtain permission for any construction of poles, lines and equipment forming part of extensions into territory not heretofore served by it, not only because the franchise rights of the defendant company confine it in the exercise of those rights to Baltimore City, and its contiguous territory; but in addition, the language of Sec. 33 of the Public Service Commission law does not permit the defendant company to begin any construction under its franchise, which is in effect a construction under a new franchise and an invasion of the natural territory of the Northern Maryland Company; which territory it was primarily formed to serve, and which it has continuously served in the exercise of its franchise rights. And further that if the Consolidated Gas Company enters Havre de Grace, it will be destructive of invested capital in the Northern Maryland Company, and disturb service and rates to an extent which must eventually react to damage and loss of the public in that community.

This Court is asked to find some way to avoid such consequences, but many of the reasons assigned to invoke the writ of injunction to that end are more for the Legislature than the Court; unless it appears in what has been done by the Legislature, the situation is covered.

The defendant company contends that notwithstanding its past custom of submitting plans for extension to the Public Service Commission, it was more by grace, than in recognition of any legal duty or obligation so to do, and that it is not required by law to ask for permission from, or the approval of the Public Service Commission, because its franchise is State wide. That it can carry its lines and service to any point in the State where it finds a demand, without asking for the approval of the Public Service Commission. That the limitation on construction in Section 33 contemplates only the initial work in exercise of a franchise, and does not cover renewal or extension of its plant or equipment, irrespective of the territory it might invade; whether through counties, towns, or cities, except in so far as the Public Service law is regulatory in the enforcement and operation of the police powers of the State.

It has been repeatedly decided by the Court of Appeals of this State that when a franchise is accepted and acted upon, the money is invested to make productive the rights conferred under a charter, and thereby give it the nature of a contract, the State cannot, as a rule, by subsequent legislation limit or impair those franchise rights, and if done, only with compensation. These separate charters of the Consolidated Gas Company antedated the passage of the Public Service law by twenty years or more, and it is little wonder that when the Public Service law was passed in 1910, its provisions dealt with conditions as they then were, and not with a vision as to the growth and extension of electric power companies, which experts in that line did not possess.

Transmission lines carry electric current many miles at the present time, and transforming plants make it serviceable at points far distant from its generating source.

The Legislature has now recognized that situation, and a law has been enacted requiring the permission and approval of the Public Service Commission to any extension of its lines, works or systems, etc.

There is nothing in Sec. 33, *as it now stands*, dealing with the extension of lines or service. And the question arises, do the provisions of Section 33 give to the Public Service Commission the power to limit or control the right of the Consolidated Gas Company to erect poles, wires and equipment to extend its lines and system under the exercise of its franchise? The answer is in the negative.

The character of the franchise of the defendant company is an amalgamation of a number of companies formed under the general laws of the State.

Code of 1904, Art. 23, Sec. 28, Class 13, provides as follows: "For constructing, owning or operating telegraph or telephone lines in this State, where the principal office of said corporation is located in this State, and for the transaction of any business in which electricity over or through wires may be applied to any useful purpose."

Bagby's Code, Art. 23, Sec. 337, provides as follows: "Any of the corporations formed under Class 13, Sec. 28 of this Article, as codified by the Code of 1904, shall have the power which is conferred upon telegraph companies incorporated under this Article by Section 295, and may construct and lay any part of its line or lines under ground or any route for which it is authorized to construct such lines in whole or in part, above ground," etc. * * * "provided, however, that all corporations incorporated, or to be incorporated, by virtue of said Section 28, Class 13, and all corporations heretofore or hereafter incorporated under the provisions of the corporation law of 1908, shall obtain the assent and approval of the Mayor and City Council of Baltimore City, before using the streets or highways of Baltimore City, either the surface or the ground beneath the same."

Under Section 295 of Article 23 of Bagby's Code, referred to in Section 337, telegraph and telephone companies are authorized to "construct a line or lines of telegraph through this State, or from or to any point or points within this State, or upon the boundaries thereof, and along and upon any postal roads and postal routes, roads, streets and highways, or across any of the bridges or waters within the limits of this State, by the erection of the necessary fixtures, including posts, piers or abutments, for sustaining the cords or wires of such lines, without their being deemed a public nuisance, or subject to be abated by any private party," etc.

The nature of the franchise is general in its scope, and has been acted upon by the defendant company as State wide. Extensions far beyond the limits of Baltimore City have been made and at least two have been approved by the Public Service Commission. In the case of the Aberdeen extension, a protest was filed by the Northern Maryland Company, and resulted in the Public Service Commission requesting the opinion of the Attorney General, as to the necessity for the consent of the County Commissioners of Harford County, to enable the defendant company to carry its lines into that county.

The record does not disclose that the precise point now before the Court was involved in that proceeding, because in that extension the Consolidated Gas Company did in fact submit its plans for approval to the Public Service Commission, and it was granted.

But this Court holds that under Section 33 (Code, Art. 23, Sec. 390) the *right* of the defendant company to extend its service into Havre de Grace, is not subject to review by the Public Service Commission.

That is a right conferred by the Legislature of the State, and long antedated the creation of the Public Service Commission. To make the exercise and enjoyment of that right subject to the approval of the Commission, could only be done by a retroactive construction of Sec. 33, which course is never adopted unless the law itself clearly requires it to be done, or so directs.

"A statute will not be given a retroactive operation unless its words are so clear, strong and imperative that no other meaning can be annexed to them, or unless the intention of the

legislature could not be otherwise satisfied; this rule is one to be adhered to, especially when any other construction would alter the pre-existing condition of the parties, or would affect or interfere with their antecedent rights."

Jeavons vs Pittman, 126 Md. 650. See also: Fidelity Savings Bank vs. Vandiver, 125 Md. 352. Ellicott City vs. Howard County, 127 Md. 578.

The omission to provide for extensions was recognized by the Legislature, when, at its last session in 1927, it amended Sec. 33, so as to apply expressly to the making by an electrical corporation of "any extension of its lines, works or system," etc.

The remaining point for consideration is the effect of the Act of 1902, Chapter 127, which is an amendment to the Charter of Havre de Grace. Among other things, Section 152 of that Act provides:

"No use shall be made of the streets of said city by an individual or corporation for the purpose of a railroad, tramway, telegraph line, telephone line, electric light or power lines, electric subways or gas or water conduits or pipe lines, without the consent of the Mayor and City Council, and subject to such franchise tax and regulations as they may by ordinance prescribe."

Under Section 337 of the Code, the streets and highways of Baltimore City cannot be used without its assent and approval. Can it be successfully contended that Havre de Grace by the Act of 1902, Chapter 127, is placed in the same position as Baltimore City? Certainly not as to franchise rights granted and exercised prior to the passage of the Act of 1902.

If otherwise the result would be that when a telegraph, or telephone line or an electric service line reached its corporate limits, it would be blocked either to give service within its corporate limits, or to carry through for service beyond its locality. This would be in defiance of the right granted by the State to the Consolidated Gas Company, or any other like corporation under Section 28, Class 13, Article 23, of the Code of 1904, and would be a limitation of the exercise of its franchise. If possible, two laws emanating from the same source, and of equal dignity, must be construed to operate harmoniously, to the end that each may be given effect.

With this rule of construction applied to this case, the Act of 1902, Chapter 127, must be held to mean that any telegraph, telephone or electric company, which extends its service to that section of the State, and enters the City of Havre de Grace, is subject to regulations as to manner and method in the use of its streets. In the instant case the City Council of Havre de Grace by ordinance has requested the defendant to furnish electric light and service to the city, and its inhabitants.

It does not appear to this Court that the request ordinance is a franchise from the City of Havre de Grace, the exercise of which is a new franchise to this defendant company, since the passage of the Public Service law, and therefore makes the construction of poles and wires to provide electric light and service in that city, the character of construction to require the permission and approval of the Commission.

As is so aptly stated in the brief of the defendant's solicitors:

"Though the consent of the City of Havre de Grace doubtless may operate to create a franchise in a grantee who already has no franchise (Ghee vs. Northern Union Gas Co., 158 N. Y. 510, 513, quoted in New York Electric Lines vs. Empire City Subway, 235 U. S. 179, 192), nevertheless neither the Act of 1902, nor a failure or refusal of the city to give its consent under that Act, operates to repeal a pre-existing franchise or to prevent creation of franchises under general laws. As to pre-existing franchises— particularly franchises under Section 337—the Act of 1902 works no repeal, but delegates to the City of Havre de Grace broad police powers to regulate, and proprietary power to exact compensation, which have repeatedly been held to be consistent with the provisions of Section 337."

No attempt has been made to analyze or apply all of the many decisions which have been cited—out of the many referred to only three or four deal with similar laws out of which arises the specific point to be determined in this case. It will appear from what has been said that this Court cannot accept the majority opinion in the case of the New York Edison Com-

pany vs. Wilcox, 207 N. Y. 86. The reason being that it is not an application of Sec. 33, to a situation with facts such as are now before this Court.

The Oneonta Case, 167 N. Y. 486—does decide that the erection of poles, and the installation of wires, and the selling and distribution of electricity, did violate the meaning of Sec. 68 of the New York Public Service law, but it also held that the injunction should issue, because there is nothing in the record indicating that the relator ever secured the consent of the local authorities (as it was required to do by its charter), to construct or operate an electric lighting, power or heating system at Oneonta Plains.

If the Oneonta Case rested on the single point of erecting poles and installation of wires, and selling and distributing electricity, it would meet the situation in this case, but it would be against the rule of retroactive construction as applied in this case and therefore cannot be followed.

For the reasons herein assigned, the writ of injunction is refused, and the bill of complaint will be dismissed, plaintiffs to pay costs.